William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd; Suite 300-251
Flagstaff, Arizona 86001
Email: will@willgraven.com; Telephone: 928-890-8825

FILED _____ LODGED
_____ RECEIVED _____ COPY

JAN 1 2 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, PHOENIX, DIV.

| | |
|---|---|
| In Re: William A. Graven, <br> Plaintiff, <br> v. <br><br> Mark Brnovich, for acts as Attorney General; Michael Bailey for acts as Asst AG and Chief of Staff; Don Conrad for acts as Chief of the Criminal Division; Paul Ahler for acts as Chief Prosecutor and later Criminal Division Chief; Joe Waters for acts Asst AG; Lisa Rodriguez for acts as Criminal Division Administrator; Mark Perkovich for acts as Chief of Special Investigations; Zora Manjencich for acts as Asst Criminal Division Chief and FSP Section Chief Counsel; John Lopez for acts as Solicitor General; Jennifer Perkins for acts as Asst Solicitor General; John Doe's I through X; and Jane Doe's I through X; all for acts committed as Arizona State officials but for the resulting personal (not State) liabilities; and attorney Mark Dangerfield for acts in his past representation of the Defendants, <br><br> _____ Defendants. | Case No.: _____ <br> **CV22-00062-PHX-SMB** <br> Case Filed: <u>January 11, 2022</u> <br> Assigned to Honorable Judge: _____ <br><br> COMPAINT FOR CIVIL LIABILITIES <u>FROM THE BELOW CAUSES OF ACTION</u>; <br> 1.) VIOLATIONS OF THE 14TH AMENDMENT OF THE US CONTTITUTION FOR DUE PROCESS <br> 2.) VIOLATIONS OF THE 14TH AMENDMENT FOR EQUAL PROTECTION <br> 3.) VIOLATIONS OF 42 USC SEC 1983 <br> 4.) VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) 18 USC SEC 1961 <br> 5.) CONSPIRACY TO COMMIT RACKETEERING ACTS IN VIOLATION OF 18 USC SEC 1961 <br> 6..) OBSTRUCTION OF JUSTICE 18 USC Sec 1503 <br> 7.) FRAUDULENT CONCEALMENT <br> 8.) FRAUD AND OTHER DECEPTIVE ACTS ON THE COURT <br><br> TRIAL BY JURY REQUESTED |

**OPENING COMMENTS BY FACTUAL ALLEGATIONS:** Defendants have used the power/credibility of the Attorney General's Office and their cleverness to lead me on a wild *geese* chase as I sought Justice for injuries by their criminal acts when they "exonerated" the Snell Parties (Snell's *and* Defendants' criminal acts are documented by AGO records). Defendants concealed records; refused records requests; denied records existed; fired active investigators; threatened witnesses; forged records to stop restitution I was receiving; Manufactured Evidence; dismissed completed criminal cases against already convicted criminals (who were to testify against the Snell Parties); committed repeated Frauds and other deceptive acts on the Court(s); and hid their corrupt and criminal acts behind/abused the 11th Amendment for State Sovereignty...*all to exonerate the Snell Parties for their criminal acts and to cover Defendants' own tracks, left from the acts they committed exonerating the Snell Parties.*

Most shocking is that Defendant Lopez as Sol Gen, using Manufactured Evidence, swore to the Arizona Supreme Court **that Defendant Ahler was Screened** (Sec's IIC-2/3). Lopez then lied again when *he swore that Ahler was **not** "involved.*" These claims are lies, as Ex's 13, 14, 15, 17, 25-31 and 35 document Defendants' criminal acts... acts which **included** *Ahler*, as they exonerated the Snell Parties. With the foundation of these first two lies, Lopez was then able to swear to an even larger lie (Ex 51)**:** the AGO simply made the **"decision to decline"** charging the Snell Parties. Defendants, building on this fraudulent foundation, covered their tracks, and used such as defenses.

**Please** *see* Factual Allegations for Voiding *Res judicata* and Statutes of Limitation as Sec II.

*Between Defendant Lopez's 3 Major Frauds on the Arizona Supreme Court and the miscellaneous frauds he*

1

*created (to be seen in Sec's IIC-2/3); Defendants forging 5 important AGO Forged Records (to be seen in Sec IIC-1b-1l); concealing records; and their having no moral issue with Frauds/deceptions on the Courts; all of which Defendants used time and again; their "defenses" have been impenetrable...until now.*

## I. INTRODUCTION TO THIS COMPLAINT, BY FACTUAL ALLEGATIONS

1.  On November 3, 2011, I walked into the Arizona Attorney General's Office with sixteen 3 inch 3-ring binders of evidence (*per* my "investigating"), asking to speak with someone. I was directed to the Duty Agent for that day, to whom I alleged a number of criminal acts by several of my former employees, including the President of several of my companies; my CFO; General Counsel (who was also my personal attorney) (Daniel Esposito); VP  of Finance; Controller; Director of IT; Sr VP Construction; and 2 Sr VP's of Development; and the former owner of one of my companies, and a yet small percentage (9.9%) owner (Deborah Dubree). Yes, an unusual story, but very real: they will later be charged with 84 felonies, including "control of illegal enterprise," which is Arizona's version of RICO (these employees had formed their own crime family within my companies. (*In short*: the former/small percentage owner began a negative-control takeover plan that turned criminal.)

2.  I was told, several times, in the course of more than 4 years of working with AGO investigators and prosecutors, that I was the most organized; most prepared; and most involved Victim the AGO had ever seen.

3.  I was to later learn that the Duty Agent, Dan Woods, was a former Deputy Sherriff; then Special Agent for the FBI; then Covert Operations officer for the CIA, who had returned to Arizona for his terminally ill Mother.

4.  Eight of the above suspects became defendants to a $45 million Asset Seizure Warrant (**Ex 1**).

5.  Seven of ten defendants will plead guilty, and sign Plea Agreements, which included substantial restitution, including having their assets seized and liquidated as defendants to the just described Asset Seizure Warrant. The remaining three defendants were scheduled for trial, when two of them offered to plead guilty.

**Note 1:** Defendants to this Complaint will later conspire to/actually dismiss all cases against these seven criminals who had pled guilty, and close cases on the way to the Grand Jury. (***The root of these dismissals/closing cases is that most of these 10 defendants had agreed to testify against the Snell & Wilmer Criminal Case suspects***, which *see* Supporting Acts **Sec II-I** Par's 407-409 particularly bullets 6-9 and 19-23)

6.  The outcome of my first visit to the AGO began with a single case, the Graven Investigation Case, which later became the Graven Master Case, as that first Case was split into various "Subsidiary Investigations."

7.  When a Subsidiary Investigation was ready for prosecution, a new "Fraud Special Prosecution" ("FSP") case number would be issued to separate that Investigation from the Master Case (e.g., **Ex 2**) to prosecute that case as a then separate case, and a new "Special Investigation Section" ("SIS") case number would be issued (e.g., **Ex 3**) for the continuing investigation of that then standalone case (e.g., *see* separate case numbers in the **Ex's** to Par 8).

8.  By April of 2014, eight of my former employees and the former owner as listed above had been charged as described above (e.g., **Ex's 4** Ref 1; **5** Ref 1 and **6** Ref 1) (2 others will later offer to plead-out before charged).

9.  Also by April of 2014, during the then 2 and ½ year old investigation, Woods and other Special Agents ("SA") that worked on my Cases thought they had discovered criminal activity between two of my former executives (who had already been charged for other crimes [Dubree and Esposito]), and three attorneys from my former chief outside legal counsel, Snell & Wilmer (the "Snell Parties") (*see* Woods' Sworn Affidavit as **Ex 7**, Paragraph 47):

"47. In about April 2014, while conducting the above-described investigations, I discovered evidence that in December 2005, Deborah Dubree and Daniel Esposito had directed Snell & Wilmer to make changes to the ABS shareholders' agreement, without Will Graven's knowledge, in an effort to take control of ABS."

10.  The first description of this suspected criminal activity involving the Snell Parties was contained in the $45 million Seizure Warrant filed by the AGO against my former employees on 5/20/2014 (No. SW 2014- 010044) (**Ex 1**). This first description of what became the Snell & Wilmer Investigation can be seen in Par's 117, 119, 120, 121,128, 134, 135, 136, 147 and 149 of the Asset Seizure Warrant (**Ex 1**; and Woods' Sworn Aff **Ex 7** Par 49):

"49. The May 2014 seizure warrant affidavit also included the limited details I knew at the time related to Deborah Dubree and Esposito working with Snell & Wilmer, without Will Graven's knowledge, to try to take control of ABS."

11.  The then Attorney General, Tom Horne, not only approved opening an investigation into this suspected criminal activity involving the Snell Parties, but he approved charging them if the suspected criminal activity was proven (investigators/prosecutors asked to know before expending resources [Snell's influence is well known]).

12.  The AGO issued a Subpoena to Snell, but they refused to provide the materials (Woods' Aff **Ex 7** Par's 62/63):

"62. In September 2014, AAG Waters issued a State Grand Jury subpoena to Snell & Wilmer and demanded copies of all internal client files related to Will Graven and his companies. AAG Waters included a waiver of privilege that I had asked Will Graven to sign.

63. Snell & Wilmer Attorney Lisa Coulter responded on behalf of Snell & Wilmer and said Snell & Wilmer could not provide the requested documents because Will Graven was not Snell & Wilmer's client, and therefore, had no standing to waive privilege. My investigation confirmed this was a false statement, but I do not know if Lisa Coulter knew it was false or if she was simply misled by the other Snell & Wilmer attorneys who fully understood the true history, nature, and scope of Snell & Wilmer's attorney-client relationship with Will Graven and his network of companies (refer to the Snell PowerPoint/video)."

13.  Once the AGO obtained a Court Order against Snell & Wilmer, and received the materials they sought, investigators were able to quickly confirm the suspicions they had developed the previous spring, and they then received final approval to charge the Snell & Wilmer Investigation suspects (and Snell & Wilmer refused to allow their 3 [suspect] attorneys being interviewed at this time also) (Woods' Sworn Aff **Ex 7** Par 64):

"64. In November 2014, AAG Waters obtained a court order for Snell & Wilmer to provide the requested documents.  Snell & Wilmer subsequently provided me with a CD that contained copies of Will Graven's client files. **I quickly found documents that I believe incriminate Snell & Wilmer Attorneys Jim**

**Sienicki, Mark Ohre, and Bill Kastin in the scheme to give Deborah Dubree and Daniel Esposito control over ABS**. I also noticed that several incriminating documents that *should have* been on the CD, were in fact, missing from the CD. When I tried to interview Jim Sienicki, Mark Ohre, and Bill Kastin, Snell & Wilmer declined the interviews and then retained criminal defense attorney Michael Piccarreta (refer to the Snell & Wilmer PowerPoint/video)." (Bold underline by Plaintiff.)

14.   In preparation for taking the Snell Case to the Grand Jury, Woods and prosecutor Joe Waters (now Defendant Waters) turned their rough draft Written Report, started months earlier, into a detailed document (**Ex 8** [51 pgs with 155 Ex's]), and they started what became a more than 1,000 slide PowerPoint (**Ex 9**):

"69. In early 2015, I started writing a detailed report to document the Snell & Wilmer- related scheme. I also started working on a PowerPoint to present and explain the evidence in a logical order."

15.   In early January of 2015, newly elected Attorney General (now Defendant) Mark Brnovich, took office.

16. ***This is a watershed event as Snell & Wilmer was/is Brnovich's political sponsor...and Snell was about to be charged*** (unbeknownst to Brnovich as he took office [Brnovich will not know until mid-May [*see* Par 27]).

17.   Six suspects resulted from the Snell & Wilmer Criminal Investigation. Two were former executives of mine, and four were the "Snell Parties**:**" three Snell attorneys, and Snell & Wilmer itself a firm (**Ex's 8** and **9**).

18.  Asst Chief Woods and the prosecutor long assigned to my cases Defendant Waters, just before a planned meeting to obtain new FSP and SIS case numbers from Criminal Division Chief (now Defendant) Don Conrad, to charge the 6 Snell Case suspects, completed a Plea Agreement (**Ex 10**) with one of the Snell Case suspects, Deborah Dubree (so 5 suspects were left to be charged). Dubree agreed to testify against the other suspects.

19.   The Plea Agreement (**Ex 10**) included a Factual Basis Addendum in which Dubree described how the Snell Parties had created and managed the Snell Case crimes. Again, Dubree pled guilty, and agreed to testify against the other Snell Case suspects who had been approved for charging (**Ex 10**, *see* the third set of pages, pgs 3/4).

20.   On or about 4/22/15, Woods, Defendant Waters, and Team, had Dubree's Plea Agreement in hand; a 51 pg Written Report with 155 Ex's from the one-year Snell Case Investigation (**Ex 8**); and a 3 hr PowerPoint Report with over 1,000 slides detailing the information and evidence collected in the Investigation (8 of the "Recommended Charges" slides can be seen in **Ex 9** [the entire PowerPoint had been available on YouTube at**:** youtube.com /results?search_query=snell+woods+graven], but it has been taken down (*see* **Ex 11** [500MB]).

21.   Woods and his often co-investigator, SA Lauren Buhrow, their supervisor, who was the Chief of Special Investigations, Andy Rubalcava, and prosecutor Defendant Waters, then met with and obtained written approval for new FSP and SIS numbers (*per* Par 7) from the Chief of the Criminal Division, Defendant Conrad (**Ex's 2/3**).

22.   Conrad's approval to issue new FSP and SIS numbers (**Ex's 2/3; 12**) separated the Snell Criminal Investigation from the Graven Master Case to open a separate/stand-alone case to charge, prosecute, and continue investigating.

23.  That the Snell Case prosecution was expected, even in its early stages, to be a "...matter of political sensitivity," can be seen three-quarters of the way down the SIS Form (**Ex 3** at Ref 1).

24.  Following Conrad's approval to issue new FSP and SIS numbers, his then Chief of Prosecutions (now Defendant) Paul Ahler, gave notice to prosecutor Defendant Waters that he (Ahler) had a conflict with the prosecution of the Snell Case (**Ex 12** pg 2 Ref 1). Ahler's conflict included that his son is an attorney at Snell.

25.  Following Defendant Ahler's Notice, Defendant Conrad issued a ***strict*** screening Memorandum (**Ex 12** [the "Original Ahler Screening Memo"]), screening Ahler from all Graven Cases information/activity, particularly the Snell & Wilmer Case, of course (**Ex 12** pg 2 at Ref's 1/2), *requiring files be marked restricted, that no one discuss these matters with Ahler, and that Conrad be notified if a breach occurred* (**Ex 12** pg 3 at various Ref's).

26.  During the meeting Defendant Conrad had with Woods, Defendant Waters, Buhrow and Rublcava, Conrad asked Woods and Waters to prepare a potential debriefing of the Snell Case for Defendant Brnovich as Attorney General and (now Defendant) Michael Bailey as Asst AG and Chief of Staff (Woods' Aff **Ex 7** Par 73):

"73. In April 2015, I met with Don Conrad, AAG Waters, and Andy Rubalcava, in Don Conrad's office. Don Conrad had a printed copy of his executive overview in his hand. It was a short meeting, perhaps 15-20 minutes, during which <u>**Don Conrad expressed his full support for moving forward with charging all suspects, including the three Snell & Wilmer attorneys**</u>. <u>**He told AAG Waters and I to be prepared to present the case to Attorney General Brnovich and Chief Deputy Mike Bailey**</u>." (Bold underline by Plaintiff.)

27.  A few days later, Defendant Conrad was seen leaving for Defendant Brnovich's office to invite Brnovich to a debriefing...but when Conrad returned from Brnovich's office (the first Brnovich had heard of the Snell Case), his demeanor and support for charging the Snell suspects had entirely changed from support to resistance...***records will show that this is when Brnovich's efforts/plan to exonerate the Snell Parties began***. Noting, no one but Brnovich could have led such a plan; and overridden a previous Attorney General's approval, and the current Chief of the Criminal Division, Conrad's, approval, to charge the Snell Parties. (Woods' Aff **Ex 7** Par 84):

"84. A day or two before the scheduled presentation, Don Conrad told me he had canceled the presentation to Attorney General Brnovich **and Chief Deputy Mike Bailey**. Don Conrad told me, "You need to get through me first." I recall talking with AAG Waters about how surprised we both were at Don Conrad's sudden and unexplained change in position (<u>**which apparently occurred immediately after he asked Attorney General Brnovich to attend a presentation advocating for charging three Snell & Wilmer attorneys, and possibly the firm, with criminal fraud**</u>)." (Conrad actually forgot to tell Bailey about the Snell Case, which *see* in Par's 28.)

28.  Defendant Bailey accidentally arrived at the debriefing (that was to have included Defendants Brnovich and Bailey), which had been scheduled for Defendant Conrad only. Bailey's reaction to Woods and Defendant Waters' PowerPoint supports what the Snell Case's chief investigator, Woods, and prosecutor Waters, presented, but Conrad was now denying, as he (Conrad) acted on Brnovich's instructions (Woods' Aff **Ex 7** Par's 84-96):

"86. On May 15, 2015, the day of the scheduled presentation, AAG Waters and I were in the executive conference room setting up the projector when Chief Deputy Mike Bailey walked into the conference room and politely asked what we were doing. I told Mike Bailey we were preparing to present the Snell & Wilmer case to Don Conrad. **Mike Bailey looked surprised as if he had never heard anything about the Snell & Wilmer case**.

92. During the meeting, Mike Bailey respectfully challenged Don Conrad. On more than one occasion,
Mike Bailey motioned his hand toward the screen and said, **"We have to do something, Don. Isn't there something criminal we could charge?"** Don Conrad just kept his arms folded in front of him, nodded his head no, and repeated that we were  "woefully short." **At the time, this confused me because it was clear that Don Conrad had formed an opinion without fully understanding the evidence**.

**During the days and weeks after the meeting, AAG Waters and I spoke with several other prosecutors and SIS investigators. There was unanimous agreement that the Snell & Wilmer attorneys should also be charged. No one could explain why Don Conrad changed his opinion so suddenly, without any explanation, and apparently right after he had requested the meeting with AG Brnovich**."

29. Subsequent records document Defendants' corrupt and criminal acts as they "exonerated" the Snell Parties, and then committed additional criminal acts to cover their own tracks. These records make it clear why Conrad had reversed himself from "**full support for moving forward with charging all suspects**" (Par 26) of the Snell Parties: ***Brnovich had given Conrad and Ahler a mandate to exonerate the Snell Parties*** (*see* Par's 31-44).

30. Perhaps a private comment Chief of Special Investigations Andy Rublcava made to Woods one day just before Rublcava retired explains what was behind Brnovich and Conrad's refusal to charge the Snell Parties:

"96. In June 2015, Andy Rubalcava retired. In the days just prior to leaving the AGO, Andy Rubalcava told me that **Don Conrad had told him the AGO would** *never* **charge the Snell & Wilmer attorneys and that AAG Waters and I were "amateurs" for even considering it.** I got the impression from Andy Rubalcava that he was only trying to protect me, so I would have realistic expectations relative to ever  changing Don Conrad's mind."

***The day Defendant Conrad went to invite Brnovich to the debriefing...Brnovich explained the facts of corrupt life involving Brnovich and his political sponsor, Snell & Wilmer...and Brnovich enlisted Ahler (which see).***

31.  By records that followed Defendant Conrad's Case-changing trip to Brnovich's office to invite Brnovich and Bailey to a debriefing of the Snell Case, it is clear that Brnovich put Ahler in charge of "exonerating" the Snell Parties (Ahler will be rewarded: He will be replace Conrad as Chief of the Criminal Division a few months later).

32.  As an example of Ahler's having been put in charge of "exonerating" the Snell Parties: shortly after he  (Ahler) was Screened from my Cases (**Ex 12**), *he led completing/forging the Case Charging Approval Form* (**Ex 13**) for the Snell Case crimes, removing the Snell Parties' names (**Ex 13** pgs 2/3 Ref 2) and their involvement (rewriting the results of the investigation, e.g., **Ex's 8/9/2/3**), *just before* it was to be sent to the Grand Jury (**Ex 13** pg 5 Ref 1).

**Note 2:** Putting Ahler "in charge of exonerating" the Snell Parties" may sound a bit melodramatic...but not only did he commit Criminal Conflict by violating his Screen to take part in the Case Charging Approval Form...he openly communicated with Co-Defendants about my Cases, including the Snell Case (**Ex's 25-31**)...*and he ran at least meeting in Bailey's office with Conrad and Perkovich regarding me/the Snell Case!* (**Ex 31,** Par's 151/152)

6

33.  When Conrad Ahler and Waters completed this Charging Approval Form (**Ex 13**), they actually removed the names of the Snell Parties who had been investigated, *per* the Investigation Reports (**Ex's 8/9**), and approved for charging (**Ex's 2/3**); and only 1 of 5 Snell Case suspects was left to charge: Esposito (**Ex 14** pgs 2/3 Ref 1).

34.  What was Esposito was charged for? Conspiring *__with__* the Snell Parties! (**Ex 14** pgs 2/3 Ref's 1/2) ***By Conrad/ Ahler/Waters' criminal forgery, the Snell Parties were not charged, nor even mentioned in these 2 Forms***!

35.  Defendants Conrad, Ahler and Waters had removed the Snell Parties' names, leaving Esposito's...even though they had Dubree's Plea Agreement in hand (**Ex 10**, *see* the third set of pages, pgs 3/4), with a detailed description of how the Snell Parties had created and managed the Snell Case crimes, and they had Dubree's agreement to testify against the Snell Parties (**Ex 10**). *See* the list of Snell Case suspects' names who were investigated and approved for charging in **Ex's 8/9;** and *see* the same suspects approved for charging in **Ex's 2/3.**

*36. **This is only the beginning of what Defendants will do to exonerate Snell and cover their own tracks.***

37.  Ahler being Screened, but participating in this Form is **Criminal Conflict of Interest (ARS 38-510).**

38.  Conrad and Waters enabling Ahler to participate in this Form is **Criminal Facilitation (ARS 13-1004).**

39.  Conrad, Ahler and Waters discussing Ahler's participating in this Form, so he could commit Criminal Conflict makes their cooperation, and Conrad/Waters Facilitating Ahler, **Criminal Conspiracy (ARS 13-1003).**

40.  Conrad, Ahler and Waters forging the results/contents of the Case Charging Approval Form to remove the Snell Parties' names and their involvement in the Snell Case crimes, is **Criminal Forgery (ARS 13-2002).**

41.  Conrad, Ahler and Waters discussing their forging the description of the Snell Case crimes and suspects names makes their cooperation in this matter **Criminal Conspiracy (ARS 13-1003).**

42.  Ahler giving legally required notice of being conflicted, so Conrad could then issue a Screen of Ahler, so they could then commit criminal acts behind that Screen, is a **Fraudulent Scheme and Artifice (ARS 13-2310).**

43.  Conrad, Ahler and Waters exonerating the Snell suspects through the above series of acts is obstruction of Justice, known under Arizona law as **Obstructing a Criminal Investigation or Prosecution (ARS 13-2409).**

44.  At least two of the above criminal acts qualify as "predicate acts," thusly, Conrad, Ahler and Waters operated as a criminal enterprise, and thereby committed **Racketeering Activity (18 USC Sec 1961).**

45. All other Defendants will also be seen committing countless corrupt and criminal acts...noting, **Ex's 14, 17, 25-31**, **35**, **51** and **Sec IIC** Defendants Manufacturing Evidence, and Supporting Acts **Sec II-I**.

46. Brnovich and Co-Defendants' initial handling of "exonerating" the Snell Parties was done poorly, which left many lose-ends, which needed to be cleaned-up...***which led to the axon of the cover-up often becoming worse than the act the cover-up was meant to cover***...which led to at least the 10 of the 11 named Defendants here

committing various corrupt and criminal acts to exonerate the Snell Parties, *and* criminal acts to cover their own criminal tracks from having "exonerated" the Snell Parties (*see* "Supporting Acts" as **Sec II-I** Par's 407-409).

47. Another example of Defendants' mishandling the "exonerating" of the Snell Parties, in addition to Ahler's documented participation (**Ex 13** and **Sec IIC-1b**; and **Ex's** 25-31), was ending/closing the Snell Case (**Ex 15**), *while having Dubree's Plea in hand* (**Ex 10**), including her agreement to testify against Snell/Esposito, *and while having charged Esposito for Conspiring to Commit Fraud Schemes with Snell* (**Ex 14** pgs 2/3 Ref 's1/2). *So, guess what: Dubree's guilty plea and Esposito's indictment will be dismissed* (as Defendants were completing exonerating the Snell Parties/covering their own tracks) (*see* detail for Ending/Closing the Snell Case **Sec IIC-1f**).

48. The Case Charging Approval Form noted Dubree's testimonial agreement (**Ex 13** pgs 2/3 Ref 3)**:**

"Emails sent by Daniel Esposito to Deborah Dubree confirm their intentions **as well as Deborah Dubree's testimony as obtained through a testimonial agreement**."

49. So...Dubree's Plea Agreement (**Ex 10**) was instrumental in charging Esposito...*but did not apply to charging the Snell Parties?* (Dubree's Plea Agreement describes how Snell created/managed the Snell Case crimes.)

50. Defendant Brnovich, as the ring-leader of Defendants, will create and manage the "exoneration" of the Snell Parties, and the following cover-up...which collectively resulted in my injuries and damages. **Acts Defendants will commit to exonerate the Snell Parties and cover their own tracks include:**

A.) Defendants concealed records that documented their own criminal acts, which required additional and complex efforts and years by me to obtain these records (*see* **Note 3** just below Re Evidence) (my early Complaints did not/could not, obviously, include records Defendants concealing). *See* **Ex 11** here, a photo of 9 disks, which supposedly included all Graven Cases records. I note with particularity that the records that documented their criminal acts, seen in **Ex's 13, 14, 25-30, 35** and as explained in Par's 31-44, and 76-93, were all records withheld from these 9 disks (concealing these particularly probative records is a violation of Due Process, and criminal);

**Note 3:** *Re Evidence*: Defendants would not respond to my request for more records, so I was forced into finding additional records by using "Alternate Sources"...parties other than myself that would file a legal Public Records Request ("PRR"), and then forward me what they had received. It took almost 4 years for my Alternate Sources to receive responses to their various PRR's, which would include thousands of pages (which I had to sort through by myself), and in amongst that volume, I found **9** particularly important records that documented their criminal acts (I believe these concealed records accidentally slipped through [*see* **Ex's 13**; **14**; **25-30**; and **35**]).

B.) Defendants threatened potential witnesses to their (Defendants') criminal acts (e.g., **Ex 16** Par 153);

C.) Defendants removed me, by forgery, as the Victim to the crimes against me by former employees, as Defendants claimed they had "been notified" (**Ex 17** pg 2 Ref 1) that I was no longer the Victim (they were "notified" by criminal defendant Esposito's attorney [who actually/only filed a Motion for a Determination, but which Defendants will act on, which *see* **Sec's IIC-1j**]), after my having been the Victim for more than 4 years of investigating; prosecuting; and issuing restitution checks...to me, only.

D.) Defendants removed my name, by forgery, as the Victim to the crimes they had investigated, not just to stop my receiving Restitution payments, but as an attempt to destroy my Standing, thereby seeking to kill any actionable rights I had (which they will use as a defense against actions I will file against them in the future [*see* **Sec IIC-1j**]);

E.) Defendants stopped seizing and liquidating the assets of criminal defendants, and paying those proceeds to me as Restitution, as *per* the Asset Seizure Warrant described above (**Ex 1**) (*see* **Sec IIC-1j**);

F.) After bullets C and E here, I could no longer afford an attorney (Defendants knew my finances, or rather lack of, so cutting off my receiving Restitution was an obvious effort to suffocate my ability to retain counsel and continue my efforts (I have lived as a vagabond since, while pursuing Justice), as they were concerned I might eventually uncover what they had done (and they were right...as I have uncovered what they did) (*see* **Sec IIC-1j**);

G.) Defendants actually Manufactured Evidence, and then used it in the Arizona Supreme Court, to then use that fraudulently won "victory" in succeeding defenses against me/my Complaints (*see* **Sec IIC**);

H.) Defendants closed the Snell Case (**Ex 15**), although Dubree had pled guilty and signed a Plea Agreement and Esposito and had been charged for Conspiring to Commit Fraud Schemes **_with_** the Snell Parties (*see* this record/forgery of the Ending/Closing the Snell Case in **IIC-1f**);

I.) Defendants closed by forgery the Victorville Case (**Ex 18**) and the Rubble Case (**Ex 19**) (both ready for the Grand Jury). (The Snell Case and the Victorville Case [an $8.5m fraud], my two largest sources of restitution.);

J.) Defendants dismissed cases of other admitted/convicted felons (to prevent those felons testifying against the Snell Parties [e.g., **Ex 20** pg 2, at the felt-marker dots] [*see* detail for Defendants' closing cases to further exonerate the Snell Parties and further injure me in Supporting Acts **Sec II-I** Par 409 bullets 6-9 and 19-23]);

K.) Defendant Brnovich will prevent my Serving my first Complaint on his officers, by concealing not only their home addresses, but their identities as a whole; and not allowing them being Served at the AGO (**Ex' 21-24**), which left me with only the State to pursue and the 11th Amendment to block my efforts; and etc, etc, which *see*.

51. *This is an old story of public corruption: the well connected were owed a favor, and they called it in.*

## IIA. THIS COMPLAINT BY FACTUAL ALLEGATIONS FOR VOIDING _RES JUDICATA_ AND STATUTES OF LIMITATION BY DEFENDANTS' FRAUDS ON THE COURT(S); AND DEFENSES OF ONE FRAUDULENTLY DEFENDED CASE BEING USED AS THE NEXT FRAUDULENT DEEFENSE

52. **Introduction:** Defendants committed countless "General Acts Voiding *Res judicata* and Statutes of Limitation" ("General Acts" [**Sec IIB**]), and Defendants committed countless "Case Specific Acts Voiding *Res Judicata* and Statutes of Limitation" ("Case Specific Acts" [**Sec IID**]); which *see* a discussion of and examples of each below.

53. *Ten of eleven Defendants have never been Served* (only Defendant Brnovich has been Served), in large part, as Brnovich both does not allow a licensed process server (or any one else) serving AGO officers at the AGO offices (**Ex's 21-24**), *and he* (Brnovich) *hides not only their home addresses, but their identities in total*.

54. *None of the Defendants have ever had to answer* for their documented corrupt and criminal acts.

55. My past Complaints have been Dismissed by Defendants' one abused use of the 11th Amendment for **_State_** Immunity, or another...**_none of my Complaints have been judged on their merits_** (*see* **Sec's IID-G**).

56. My most recent Complaint (CV-21-01391-PHX-MTM) was dismissed for the 11th Amendment, without reviewing my factual allegations, including my claims as to who was liable. Then, rather than consider Defendant's (singularly Brnovich) Motion to Dismiss based on accepting **_my_** factual allegations as true, that Court accepted/quoted Defendants' claims as to the supposed facts of *Res judicata,* saying nothing about my allegations.

57.  This is partly my fault as I did not realize the 11th Amendment could be abused to protect state officials who had committed documented criminal acts. (*Courts thereby turning a blind eye to criminal acts still shocks me.*)

58.  So, Defendants will quite likely file a Motion to Dismiss based on *Res judicata* and Statutes of Limitation, **but their Motion will be denied upon this Court's honest review of this Complaint.**

## IIB-1: Factual Allegations for General Acts Voiding *Res judicata* and Statutes of Limitation

59.  Defendants will likely try to claim *Res judicata* and Statutes of Limitation...while having committed General Acts (and more, which *see*) that have voided both *Res judicata* (e.g., *see Riehle v Margolies* US*)* and Statutes of Limitation (e.g., *see Valerio v Cascade Corp* Ninth Circuit), acts including**:**

a.)  Defendants concealed records that documented their criminal acts (e.g., **Ex's 13**, **14**, **25-30, 35)**, which required additional and complex efforts and years to obtain these records (*see* **Note 3** above on pg 8 Re Evidence) (concealing these particularly probative records is a violation of Due Process, and criminal);

b.)  Defendants concealed these records to hide their criminal acts, from me, the Public...and most importantly, law enforcement and the Courts;

c.)  Defendants threatened potential witnesses (e.g., **Ex 16** Par 153), thereby also concealing their criminal acts;

d.)  Defendants Manufactured (Forged) Evidence and used it in Court(s), in Case after Case (*see* **Sec IIC**);

e.)  Defendants repeatedly committed Fraud and other deceptive acts on the Court(s) by concealing records and by using Manufactured Evidence (Forged), throughout all of their pleadings (*see* examples below in **Sec's IID-I**);

f.)  Defendants removed my name, by forgery, as the Victim of crimes by former employees, after I had been the Victim for more than 4 years, thereby stopping restitution payments I was receiving (**Sec IIC-1j**);

g.)  Defendants removed my name, by forgery, as the Victim to the crimes by former employees, not just to stop my receiving restitution payments, but as an attempt to destroy my Standing (which they did for any number of reasons, beginning with my having a legal right to pursue Justice against them [**Sec IIC-1j**]);

h.)  Defendants quit seizing and liquidating the assets of those former employees/criminal defendants, by the Asset Seizure Warrant seen above (**Ex 1**), and so quit paying those proceeds to me as Restitution (**Sec II-1j**);

i.)  After the just above 2 bullets Re Restitution (f./h.), I could no longer afford an attorney. Defendants knew my finances, or rather lack of, so cutting off my receiving Restitution was an obvious effort to suffocate my ability to retain counsel and continue my efforts (I have lived as a vagabond since, while continuing my efforts for Justice);

j.)  Defendants, from my first action against them (*see* in **Sec IID**), have used defenses built on frauds (including concealed records and Manufactured [Forged] Evidence), and using frauds from one Case/Court to build on to the next Case/Court. Defendants have thereby created an entirely fraud based defense history. *Defendants using earlier frauds as later defenses is not allowable...not since Booth v Lord Warrington (1694-1695) has an English Court; an American Colonial Court; or a US Court, accepted a defendant pleading a defense based on his own fraud.*

## IIB-2: Conclusion to Factual Allegations for General Acts Voiding *Res judicata* and Statutes of Limitation

60.  It has been impossible to present a complete Complaint...the result of my disjointed access to what had actually happened, due largely to Defendants concealing records; threatening witnesses; Manufacturing Evidence; by forgery, stopping restitution I was receiving; their committing Frauds/deceptions on the Court(s); making

certain we never reached Discovery; and more, as Defendants vigorously sought to avoid being caught for having criminally exonerated the Snell Parties, and covering their own tracks for exonerating the Snell Parties.

61.  It is very difficult to pursue Justice when those who were most close to the events, and so would be the "star witnesses," have been threatened...or just won't come forward as they are a part of a corrupt orgnization.

62.  Being broken, financially, by the Defendants, has also made pursuing Justice a difficult challenge.

63.  Any one of Defendants' above General Acts voids a defense of *Res judicata* and Statutes of Limitation.

64.  These acts together are a story of breathtaking criminality, voiding *Res judicata*/Statutes of Limitation.

65.  *Defendants have voided any Res judicata that may have existed and they have voided any Statutes of Limitation that may have applied and that they may have been able to claim (see more reasons to void such below).*

## IIC-1a.  FACTUAL ALLEGATIONS FOR DEFENDANTS' MANUFACTURING (FORGING) EVIDENCE, THEREBY CREATING FRAUDS; WHICH THEY USED IN THE ARIZONA SUPREME COURT; AND HOW THEY REUSED AND BUILT ON THAT FIRST FRAUDULENT "VICTORY"

66.  **Introduction:** Defendants knew they were committing corrupt and criminal acts as they exonerated the Snell Parties, and so concurrently began to cover their (Defendants') own tracks for committing those criminal acts.

67.  Defendants knew they would need as many of their tricks as possible...especially, as they began to realize they had committed errors in their efforts to exonerate the Snell Parties and cover their own tracks, reaching panic mode as records they had concealed slipped through to the public ("panic mode" as reflected by frauds in their defenses) .

68.  *Defendants were caught "red handed" by their errors/accidentally released records...they chose to fight, rather than recant...they have used a "no holds barred" series of "defenses," including Manufactured Evidence.*

## IIC-1b: Factual Allegations for Defendants' Beginning Intentional, Strategic, Manufacturing of Evidence: Forging the Case Charging Approval Form (Ex 13) for the Snell Case Crimes (AGO Forged Record No 1)

69.  Defendant Conrad Screened Defendant Ahler from all Graven Cases, particularly the Snell Case, as he (Ahler) had noticed Defendant Waters that he (Ahler) was conflicted (**Ex 12** [Par's 24 and 25]), and so was Screened as required by statute; case law; and the Arizona Agency Handbook (Arizona State's employee handbook).

70.  To violate that Screen is criminal (Par's 25, 31-44 and **Ex's** [e.g., ARS 38-510]).

71.  The results of the Snell & Wilmer Criminal Investigation are conclusively detailed in**:**

1.) the Snell Criminal Investigation Written Report (**Ex 8** [51 pgs with 155 Ex's] [*see* **IIC-1f-Par1**]);

2.) the Snell Criminal Investigation PowerPoint Report (**Ex 9** [3 hrs with over 1,000 slides] [*see* **IIC-1f-Par 2**]);

3.) admitted Snell Case criminal Dubree's Plea Agreement (**Ex 10** [3rd set of pgs, pgs 3/4] [*see* **IIC-1f-Par 3**]);

4.) the Asset Seizure Warrant (**Ex 1** [*per* Par 10] [*see* **IIC-1f-Par 4**]);

5.) the Original Ahler Screening Memo (**Ex 12** [Par's 24 and 25]);

6.) the Fraud Special Prosecution ("FSP") Form that authorized a new case number to separate that investigation

from the Graven Master Case to prosecute the 6 then 5 (after Dubree signed her Plea Agreement) named Snell Case suspects (**Ex 2** [Cmplnt Par's 7, 17, 19, and 20] [*see* **IIC-1f-Par 6**]);

7.) the Special Investigation Section ("SIS") Form that authorized a new case number to continue investigating the then standalone Snell Case post charging the 5 named suspects (**Ex 3** [Par's 24 and 25] [*see* **IIC-1f-Par 7**]); and

8.) the Snell Case Charging Papers (in which Esposito was charged for conspiring ***with*** the Snell Parties [but the Snell Parties were not charged for conspiring with Esposito, *even with Dubree's Plea in hand*]) (**Ex 14** pgs 2/3 Ref 1) (which *see* in detail for in **Sec's IIC-1d** and **IIC-1f Par 8**).

72. ***The Snell Parties were thoroughly investigated and approved to be charged, as they were guilty as hell.***

73. The detailed results in these 8 AGO records can be seen below in **Sec IIC-1f** where they are reviewed.

74. Conrad and Waters committed a number of crimes to enable Ahler taking part in the Case Charging Approval Form (**Ex 13**) for the Snell Case crimes (which is Criminal Facilitation *per* Par's 31-44, and more).

75. So it is no surprise that Defendants Conrad, Ahler and Waters later committed a number of additional crimes together as they continued their efforts to exonerate the Snell Parties (e.g., **Ex's 25-31**, which *see* just below).

76. Picking up from Ahler's signing the Charging Approval Form (**Ex 13**), continuing his and Co- Defendants' exonerating the Snell Parties, other evidence I slowly obtained shows a complete disregard for Ahler's having allegedly been Screened, the US and Arizona Constitutions, US and Arizona statutes and case law, and most importantly, Due Process (the below communications are between Ahler and people who knew he was Screened)**:**

77. **Ex 25:** SA Woods wrote prosecutor (now Defendant) Waters about Graven Case matters. Waters then forwarded the Woods email to Screened (now Defendant) Ahler and Defendant Conrad (who was the one who Screened Ahler). Conrad then forwarded the Woods/Waters emails to Defendant Bailey.

78. Everyone knew to copy Ahler, as he was leading their criminal efforts to exonerate the Snell Parties.

79. **Ex 26:** Screened Ahler's Legal Administrator, Lisa Rodriguez (the longtime Legal Administrator to whomever was the Chief of the Criminal Division), emailed Ahler asking if he would be out of town the following week...Ahler responded that he would be out...without reminder or discussion, Rodriguez (who was copied on both the Original Ahler Screening Memo and the Affirmation of Ahler's Screening Memo [**Ex 35**; **Sec IIC-1h**]) said:

**"I'll reset Graven."** (*See* the meeting Ahler will hold in Defendant Bailey's office Re Graven Cases, just below.)

Ahler did not need to ask: "What do you mean Graven?"

Nor did Ahler say something like: "Oh, remember Lisa...I'm Screened from the Graven Cases."

80. The Graven matter was so much in the forefront of Defendants Ahler and Rodriguez working together... neither had to ask the other what it was...or what needed to be done for it.

81. I certainly had no planned meeting with Screened Ahler...but he was holding a meeting in Co- Defendant Bailey's office with Co-Defendants Conrad and Perkovich (which *see* in **Ex 31** Par's 87/88).

82. **Ex 27:** SA Buhrow wrote prosecutor Defendant Waters about various Graven Case matters, CCing Robert Eckert and Mark Perkovich...Perkovich forward Buhrow's email to Defendants Conrad and Ahler saying:

**"Additional issues related to the Graven matter..."**

84. **Ex 28:** Perkovich wrote Defendants Conrad and Ahler regarding a voicemail from me, in part, saying:

**"...I was hoping we could meet to discuss the future of the Graven investigation."**

85. **Ex 29:** Perkovich emailed Rodriguez, Rodriguez replied, and forwarded her exchange to Conrad/Ahler.

86. **Ex 30:** This is another Case Charging Approval Form, again, with Ahler's signature (pg 4 Ref 1). This particular Form is for defendant Hesse...who could have testified against the Snell Parties.

87. **Ex 31:** Now, returning to Woods' Affidavit for a moment, Ahler's involvement in Woods "interrogation" and Ahler's level of knowledge was so substantial that Woods was taken back by it, fits right-in with what was actually/obviously going on behind Ahler's allegedly being legally required Screen (Par's 151/152a-n).

88. *My God!* Ahler was so openly involved and in charge of exonerating the Snell Parties...he even held a meeting in Co-Defendants Bailey's office...with Co-Defendants Conrad and Perkovich taking part!

89. Ahler's involvement, with his Co-Defendants, *is criminal! This represents multiple criminal acts.*

90. *These smoking guns emails et al (Ex's 13, 14, 25-31) simply show how criminal Defendants were.*

91. It's not just that Defendant Ahler violated his legally required Due Process Screening to not know/be involved in any/all Graven Cases, *he actually took charge of my Cases...to exonerate the Snell Parties.*

92. *This wasn't "prosecutorial discretion," once Conrad "errored" and approved charging the Snell Parties, other Defendants moved-in to exonerate the Snell Parties and cover up Conrad's error, it became criminal.*

93. I suppose why Ahler was involved and why they contradicted the conclusions is obvious: Defendants committed these crimes together *to exonerate the Snell Parties*. Conrad/Ahler/Waters' criminal forgery of the Charging Approval Form clearly contradicted the results/conclusions in the above list of 8 AGO records (Par 71).

94. Criminal acts *are not needed* for honest purposes...what Defendants were doing was not honest, it was criminal.

95. The conclusions reached in all of these records can be represented by the results seen in the Fraud Special Prosecution Form (**Ex 2** at Ref 1) (again, *see* additional detail in **Sec's IIC-1f**):

"Between 12/14/2005 and 3/28/2006, **Snell & Wilmer attorneys Jim Sienicki, Mark Ohre, and Bill Kastin conspired with** 9.9% owner of Arizona Building Systems, Inc. (ABS), Deborah Dubree; and ABS General Counsel Daniel Esposito, to modify the ABS shareholders' agreement to give Deborah Dubree and Daniel Esposito control over ABS. **Jim Sienicki, Mark Ohre, Bill Kastin**, Deborah Dubree, and Daniel Esposito, concealed the modifications from Snell & Wilmer client and 90.9% owner of ABS, Will Graven.

Between 6/13/2011 and 2/21/2013, **Snell & Wilmer attorneys** continued to conceal the above-described activity by misleading Will Graven and the Court during a civil lawsuit and failing to preserve several emails, and documents."

**Note 4:** The Court will note the differences in the dates of the crimes described in the first versus the second paragraphs. The difference is that the second set of crimes were committed against me by Snell while they defended a civil Complaint I filed against them on 6/13/11. These are separate acts from those committed with my employees.

**Note 5:** Dubree's Plea Agreement is even more detailed as to Snell Parties having created and managed the Snell Case Crimes (which *see* in **IIC-1f** Par **3**).

96. I now ask the Court to compare this just above summary and suspects' names with the description of the Snell Case crimes with the suspects' names in the Case Charging Approval Form for the Snell Case crimes that Conrad, Ahler and Waters forged (**Ex 13** pgs 2/3 Ref 2):

"Snell and Wilmer: In December of 2005, Daniel Esposito, the legal counsel for ABS, was working with outside counsel for ABS, Snell & Wilmer, on a variety of projects related to ABS and to Will Graven. From December 2005 to March of 2006, Daniel Esposito conspired with the minority owner of ABS, Deborah Dubree, to have Snell & Wilmer re-write the corporate documents of ABS in an attempt to limit the power of Will Graven as the owner of ABS and force Will Graven out as owner of ABS. Emails sent by Daniel Esposito to Deborah Confirm their intention as well as Deborah Dubree's testimony as obtained through a testimonial agreement."

97. It only takes a moment to see that when Conrad, Ahler and Waters drafted this Case Charging Approval Form, they forged the results of the above 8 AGO records (Par 71), removing the Snell Parties' involvement, including they (Conrad et al) removed the names of ***the three Snell attorneys***, and ***Snell as the firm*** being culpable.

98. Conrad, Ahler and Waters forged the description of the Snell Case crimes, and they removed 4 of the 5 suspects names, as detailed in the Snell Written Report (**Ex 8**); the 3 Hour PowerPoint Report (**Ex 9**); the Dubree Plea Agreement (**Ex 10**); Asset Seizure Warrant (**Ex 1**); Original Ahler Screening Memo (**Ex 12**); FSP Form (**Ex 2**); SIS Form (**Ex 3**); and Charging Papers (which Defendants also forged, which *see* in **Sec IIC-1d**).

99. ***But then isn't that why Conrad and Waters enabled Ahler? To assist in exonerating the Snell Parties.***

100. Ahler being Screened, but participating in this Form is **Criminal Conflict of Interest (ARS 38-510).**

101. Conrad, Ahler and Waters forging this Form, including removing the 4 Snell Parties' names, to eliminate the Snell Parties' key role in the Snell crimes, is **Criminal Forgery (ARS 13-2002).**

102. Conrad, Ahler and Waters discussing their forging this Form, makes their discussion **Criminal Conspiracy (ARS 13-1003).**

103. Ahler giving legally required notice of being conflicted with the Snell Case prosecution to Waters, so Conrad could then issue a Screen of Ahler, so the 3 of them could then commit criminal acts behind that Screen, is a **Fraudulent Scheme and Artifice (ARS 13-2310).**

104. Conrad, Ahler and Waters exonerating the Snell Parties through the above series of criminal acts is **Obstruction of Justice (18 USC Sec 1503).**

105. At least two of the above criminal acts qualify as "predicate acts," thusly, Conrad, Ahler and Waters (and others, as has been, and shall be seen) operated as a criminal enterprise, and are thereby guilty of **Racketeering Activity (18 USC Sec. 1961).**

**IIC-1c: Conclusion to Factual Allegations for Defendants' Beginning Intentional, Strategic, Manufacturing of Evidence: Forging the Case Charging Approval Form for the Snell Case Crimes (Forged Record No 1)**

106. Ahler was legally Screened from all Graven Cases at the AGO, as required by statute; case law; and the Arizona State employee manual. Conflict of Interest laws and penalties are not new...nor is Due Process.

107. Ahler repeatedly violated that Screen, thereby committing criminal acts.

108. The Case Charging Approval Form is a forged fraud (as will be substantiated by its uses), *and it was issued intentionally, strategically, to create (aka: forge) a false record*.

109. *If removing the Snell Parties from the charging process was legitimate* (**Ex's 13/14**), *Conrad, Ahler and Waters would not have needed to commit criminal acts to do so*.

110. The Snell Parties have now been forged out of **1 very important AGO record** that their names should have appeared in. Conrad, Ahler and Waters will use this AGO Forged Record No 1, ***to support their next forgery***.

111. Defendants will use this forged Case Charging Approval Form to support future criminal acts and then defenses (e.g., when I sued them, they claimed there was insufficient evidence to charge the Snell Parties, so they closed the Snell Case, claiming they justifiably "**declined to charge**" the Snell Parties, which *see* **Sec IIC-1f**).

112. Defendants exonerating the Snell Parties, and covering their own criminal tracks for exonerating the Snell Parties, for an eventual fraudulent defense, begins with this 1st AGO Forged Record, *see* the next 4 Forged (2nd/3rd/4th/5th Records) Records as they continue exonerating the Snell Parties, ***and*** covering their own tracks.

**IIC-1d: Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: Forging the Charging Papers for the Snell Case Crimes (AGO Forged Record No 2)**

113. Following Defendants Conrad, Ahler and Waters having criminally forged the Case Charging Approval Form (*per* **Sec IIC-1b** above and **1f** below), removing the Snell Parties' names from the Charging Approval Form, they used that forged Approval Form to singularly charge Snell Case suspect Esposito for Conspiring to Commit Fraudulent Schemes Artifices (*see* the Snell Case crimes "Charging Papers" as **Ex 14** pgs 2/3 Ref 1).

114. Please note**: *Esposito was charged for Conspiring with the Snell Parties*!**

115. Esposito's being charged, was, of course, based upon the above 7 other AGO Records (*see* **Sec IIC-1b** and **1f** below), including Dubree's Plea Agreement (which *see* reviewed in detail below **Sec IIC-1f Par 3**).

116. The Case Charging Approval Form notes Dubree's testimonial agreement (**Ex 13** pgs 2/3 Ref 3)**:**

"Emails sent by Daniel Esposito to Deborah Dubree confirm their intentions as well as Deborah Dubree's testimony as obtained through a testimonial agreement."

117. So...Dubree's Plea Agreement (**Ex 8**) was instrumental in charging Esposito...but for some reason...did not apply to charging the Snell Parties? (Again, see the detail of her Plea Agreement in **Sec IIC-1f Par 3**).

118. Dubree's Plea Agreement included her having agreed to testify against the Snell Parties and Esposito.

119.  **Questions:** *If Dubree pled guilty to conspiring __with__ the Snell Parties, and __with__ Esposito...and Esposito was charged for conspiring __with__ the Snell Parties, __meaning they all criminally conspired together, based on the results of the investigation...why weren't the Snell Parties charged?__*

120.  ***And why Did Defendants need to commit criminal acts <u>to not charge</u> the Snell Parties?***

121.  **Answer 1:** The Snell Parties should have been charged in the Charging Papers (**Ex 14**) for Conspiracy to Commit Fraudulent Schemes **__with__** Esposito, reflecting the results of the Investigation, as seen detailed in the Snell Case Written Report (**Ex 8**) and the PowerPoint Report (**Ex 9**), and seen in Dubree's Plea Agreement (**Ex 10**), etc.

122.  **Answer 2:** But because Conrad, Ahler, and Waters had forged the Case Charging Approval Form (**Ex 13**) to keep the Snell Parties' participation and names from being included, thereby causing them not to be named in that AGO Forged Record No 1, the Snell Parties also *__did not appear__* in the Charging Papers *__with__* Esposito.

123.  The Snell Parties had been thoroughly investigated and approved for charging...as they were guilty as hell.

124.  Defendants committed criminal acts to remove/forge the Snell Parties' names out from the Charging Papers Form, contradicting the conclusion of the above 7 other AGO records (Par 71).

**IIC-1e: Conclusion to Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: Forging the Charging Papers for the Snell Case Crimes (Forged Record No 2)**

125.  The Charging Papers are a forged fraud (as substantiated by its uses)*, and it was issued intentionally, strategically, based upon the forged Case Charging Approval Form (per* **Sec IIC-1b**)*, <u>to create (forge) a false record</u> that the AGO simply, justifiably, made the decision to decline charging the Snell Parties...but Defendants committed criminal acts to draft and complete it to remove the Snell Parties' names and participation.*

126.  The Snell Parties have now been forged out of **2 very important AGO Forged Records** their names should have appeared in, by the criminal acts of Defendants Conrad, Conrad, Ahler and Waters.

127.  Defendants will use this forged Charging Papers for the Snell Case Crimes to support future criminal acts and defenses (e.g., when I sued them, they claimed there was insufficient evidence to charge the Snell Parties, so they closed the Snell Case, claiming they justifiably "declined to charge" the Snell Parties, which *see*).

128.  Defendants exonerating the Snell Parties, and covering their own criminal tracks for exonerating the Snell Parties, for an eventual fraudulent defense, continues with this 2nd AGO Forged Record (*see* the next 3 Forged Records [3[rd]/4[th]/5[th] Records] below as they are added to continue creating Defendants' foundation of frauds).

**IIC-1f: Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: Ending/Closing the Snell & Wilmer Criminal Investigation Letter/Form (AGO Forged Record No 3)**

129.  Following Defendants Conrad, Ahler and Waters having criminally forged the Case Charging Approval Form (**Sec's IIC-1b**), removing the Snell Parties' names, but charging Esposito for Conspiring to Commit

Fraudulent Schemes and Artifices **_with_** the Snell Parties, and similarly forging the Charging Papers (**Sec's IIC-1b**), they (Defendants) ended the Snell Case investigation, and then closed the Snell Case completely (**Ex 15**).

130.  But, as they closed the Snell Case...Defendants had admitted Snell Case criminal Dubree's Plea Agreement in hand, including, she had given up all of her assets, which were being liquidated, proceeds paid to me.

131.  And Esposito's having been charged (**Ex 14**) for the Snell Case crimes, was still being prosecuted.

132.  How does a case get closed...when the first defendant to that Case is waiting for sentencing, and there is a prosecution of another defendant to that Case occurring under that Case?

133.  Why were criminal acts needed to close the Snell Case?

134.  Dubree's Plea Agreement included her testifying against the Snell Parties and Esposito.

135.  So...if Dubree was going to testify against Esposito, as criminal suspect Esposito had been charged for Conspiring to Commit Fraudulent Schemes Artifices **_with_** the Snell Parties, and his charges were outstanding, and Dubree had agreed to testify against the Snell Parties....how could they procedurally close the Case?

136.  How could Defendants not charge the Snell Parties (again noting **Sec's IIC-1b**)?

137. The ending of/closing the Snell Criminal Case (**Ex 15**) is a manufactured/forged fraud, as made obvious by the above 8 listed AGO records (Par 71). This fraud was started by allegedly Screening conflicted Defendant Ahler, in order to hide him behind that Screen, giving him and his Co-Defendants, a protected place, from where he could manage "exonerating" the Snell Parties, which began in earnest when they forged the Case Charging Approval Form (*see* **Sec IIC-1b**), and continuing with foroging the Charging Papers (*see* **Sec IIC-1d**).

138.  Defendants continued their "exonerating" the Snell Parties, who had been approved for criminal charging by the just previous Attorney General, by closing, through forgery, the Snell Case investigation.

139.  Defendants were also looking to cover their own criminal tracks for having exonerated the Snell Parties by closing the Snell Case (by closing the Case, and other related, coordinated, moves[*see* Supporting Acts **Sec II-I**]).

140.  Closing the Snell Case had nothing to do with reality of the results of the criminal investigation of the Snell Case suspects (*per* the above 8 AGO records in Par 71), as, at the time of closing the Case, Dubree had plead guilty, and Esposito had been charged...even more, is what the 8 AGO records documented.

141.  Closing the Snell Case was about exonerating the Snell Parties, and it is an obvious fraud, and a major component to Defendants' exonerating the Snell Parties. My claims of forgery/fraud are based on:

1.)  The Snell Case Written Report (**Ex 8** pgs 46/47 [of 51 pgs and 155 Exhibits]) made it clear that 3 Snell attorneys had committed criminal acts against me:

"*Jim Sienicki – Snell & Wilmer Attorney*
Between 12/14/2005 and 3/27/2006, Jim Sienicki, while serving a leadership role, conspired with Mark Ohre and

Bill Kastin to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and executing new engagement letters that falsely re-wrote history; working exclusively through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer to make changes to the ABS shareholders' agreement that were against Will Graven's interests; concealing his activities from Will Graven by failing to disclose his actions during subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the changes to the ABS shareholders' agreement.

Between 3/27/2006 and 2/21/2013, Jim Sienicki misled the Maricopa County Superior Court by concealing the true nature and scope of Snell & Wilmer's engagement with Will Graven.

<u>Mark Ohre – Snell & Wilmer Attorney</u>
Between 12/14/2005 and 3/27/2006, Mark Ohre conspired with Jim Sienicki and Bill Kastin to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and executing new engagement letters that falsely re-wrote history; working exclusively through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer to make changes to the ABS shareholders' agreement that were against Will Graven's interests; concealing his activities from Will Graven by failing to disclose his actions during subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the changes to the ABS shareholders' agreement.

<u>Bill Kastin – Snell & Wilmer Attorney</u>
Between 12/14/2005 and 3/27/2006, Bill Kastin conspired with Jim Sienicki and Mark Ohre to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and executing new engagement letters that falsely re-wrote history; working exclusively through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer to make changes to the ABS shareholders' agreement that were against Will Graven's interests; concealing his activities from Will Graven by failing to disclose his actions during subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the changes to the ABS shareholders' agreement."

2.) The Snell Case PowerPoint Report (**Ex 9**), with over 1,000 slides of extreme detail (this PowerPoint was prepared to take the Case to the Grand Jury) made it clear that 3 Snell attorneys had committed criminal acts against me, and it included Recommended Charges**:**

**Slide 293: "Recommended Charges"** at the top of the slides with the following information (for acts as described throughout the PowerPoint, and as summarized on slide 292);

"On and between January 3, 2006 and April 25, 2006, **Jim Sienicki**, **Mark Ohre** and **Bill Kastin**, **engaged in a scheme to work *through Daniel Esposito* to shirk their fiduciary duty**, falsely rewrite history, and significantly redefine their engagement with Will Graven, *without Will Graven's knowledge*."

A.R.S. 13-1003 Conspiracy:
A.R.S. 13-2310. Fraudulent Schemes and Artifices:
A.R.S. 13-2301. Racketeering:
A.R.S. 13-2312. Illegal Control of Enterprise:

**Slide 296: "Recommended Charges"** at the top of the slide, and a repeat of slide 291 with pictures of the **3 Snell & Wilmer attorney suspects on the left**, and **Esposito and Dubree** on the right, with an arrow connecting the names of the two schemes, and the following information:

"**Jim Sienicki, Mark Ohre,** and **Bill Kastin, facilitated Daniel Esposito's** and **Deborah Dubree's** scheme to take over ABS by causing another Snell & Wilmer attorney, **Brian Burt,** to make the requested changes to the ABS shareholders' agreement (and caused Brian Burt to also work exclusively through Daniel Esposito)."
A.R.S. 13-1004. Facilitation:

**Slide 298**: Recommended Charges" at the top of the slide, **with the name Snell & Wilmer and a picture of their office tower on the left,** and the following information;
A.R.S. 13-305. Criminal liability of enterprises:
A.R.S. 13-1004. Facilitation:
A.R.S. 13-1003 Conspiracy:
A.R.S. 13-2310. Fraudulent Schemes and Artifices:
A.R.S. 13-2312. Illegal Control of Enterprise:

3.) Snell Case suspect/admitted criminal defendant Deborah Dubree had pled guilty and signed a Plea Agreement (**Ex 10**, the third set of pages 3 and 4). Dubree agreed to testify against the Snell Parties.

Dubree's Plea Agreement details how the Snell Parties created/managed committing the Snell Case crimes:

"8.  Between 12/2005 and 1/2006, without Will Graven's knowledge, Deborah Dubree discussed the planned changes to the ABS shareholders' agreement with several Snell & Wilmer attorneys including Jim Sienicki and Mike Donahey. Attorney Jim Sienicki told Deborah Dubree that in order for Snell & Wilmer to make the requested changes tot he ABS shareholders' agreement, both she and Will Graven needed to sign new engagement agreement letters making it clear that Snell &Wilmer did not represent Will Graven, but instead represented the interest of ABS, CBS, CBS Aviation and other jointly-owned entities. Prior to this, Deborah Dubree believed Snell & Wilmer represented Will Graven and had a fiduciary responsibility to him, just as she believed that DeConcini McDonald Yetwin & Lacy, P.C. represented her and had a fiduciary responsibility to her.

On 1/24/06, Deborah Dubree signed a new engagement letter with Snell & Wilmer at the request of Daniel Esposito and Snell & Wilmer Attorney Jim Sienicki. Jim Sienicki explained the engagement letter directly to Deborah Dubree. Deborah Dubree understood that as soon as she and Will Graven signed the new engagement letters, Snell & Wilmer could make the changes to the ABS shareholders' agreement."

With a footnote to, Snell did these things without my knowledge (*see* **Sec IIC-1f** Par 2):

"**Slide 293: "Recommended Charges"** at the top of the slides with the following information (for acts as described throughout the PowerPoint, and as summarized on slide 292);"

"On and between January 3, 2006 and April 25, 2006, **Jim Sienicki**, **Mark Ohre** and **Bill Kastin**, **engaged in a scheme to work *through Daniel Esposito* to shirk their fiduciary duty,** falsely rewrite history, and significantly redefine their engagement with Will Graven, *without Will Graven's knowledge*."

Dubree's Plea was in effect when Defendants ended/closed the Snell Investigation, and was in effect until Defendants dismissed her guilty plea on 1/12/17 (e.g., **Ex 20** pg 2) (more than 1 ½ years after she pled guilty) [*see* detail for Defendants' closing cases to further exonerate the Snell Parties and further injure me in Supporting Acts **Sec II-I** Par 409 bullets 6-9 and 19-23]).

4.) An Asset Seizure Warrant for $45 million was filed by the AGO against my former employees on 5/20/2014 (No. SW 2014-010044) (**Ex 1**). The first description of the Snell Case crimes can be seen in paragraphs 117, 119, 120, 121, 128, 134, 135, 136, 147 and 149.

An Asset Seizure Warrant is a serious undertaking...allegations to seize and liquidate people's property are not

made lightly (Dubree and Esposito were defendants to that Warrant, in part, for the Snell crimes).

5.) Defendant Paul Ahler, the then Chief Prosecutor of the Fraud Special Prosecution Section ("FSP") (of the Criminal Division), gave notice that he was conflicted with the Snell Case (**Ex 12** pg 2 at Ref 1).

Following Ahler's notice, Defendant Conrad, the then Chief of Criminal Division, issued a Screening Memo, informing a number of people of the Snell Case prosecution, which included the names of the Snell attorneys, and

the continuing investigation, and Ahler's conflict; and his (Ahler's) being Screened from **_all_** Graven Cases (**Ex 12** pg 2 at Ref 's 2 and 3).

However, shortly after Conrad Screened Ahler, he (Ahler) participated with Conrad and Waters in completing/signing the Case Charging Approval Form that sent the Snell crimes (and others) **_including suspects'_** **_names_** to the Grand Jury (**Ex 13** pg 5 at Ref 1), but the Snell Parties names had been removed.

As described above in Par's 31-44, Conrad Screening Ahler but then working with he (Ahler) and Waters to forge the Case Charging Approval Form, removing the Snell Parties, commits a number of crimes.

6.) When Defendant Conrad gave his written approval to issue the new FSP case number (**Ex 2**) to separate the Snell Criminal Investigation from the Graven Master Case to open a separate/stand-alone case to charge and prosecute the Snell Case suspects, this Form included an overview of the Case and suspects to be prosecuted:

"Between 12/14/2005 and 3/28/2006, Snell & Wilmer attorneys Jim Sienicki, Mark Ohre, and Bill Kastin conspired with 9.9% owner of Arizona Building Systems, Inc. (ABS), Deborah Dubree; and ABS General Counsel Daniel Esposito, to modify the ABS shareholders' agreement to give Deborah Dubree and Daniel Esposito control over ABS. Jim Sienicki, Mark Ohre, Bill Kastin, Deborah Dubree, and Daniel Esposito, concealed the modifications from Snell & Wilmer client and 90.9% owner of ABS, Will Graven.

Between 6/13/2011 and 2/21/2013, Snell & Wilmer attorneys continued to conceal the above-described activity by misleading Will Graven and the Court during a civil lawsuit and failing to preserve several emails, and documents."

7.) When Defendant Conrad gave his written approval to issue the new SIS case number (**Ex 3**) to separate the Snell Criminal Investigation from the Graven Master Case to continue investigating the Snell Case post charging for whatever else may be discovered, this Form included an overview of the Case to be prosecuted and so potential follow on investigating:

"Between 12/14/2005 and 3/28/2006, Snell & Wilmer attorneys Jim Sienicki, Mark Ohre, and Bill Kastin conspired with 9.9% owner of Arizona Building Systems, Inc. (ABS), Deborah Dubree; and ABS General Counsel Daniel Esposito, to modify the ABS shareholders' agreement to give Deborah Dubree and Daniel Esposito control over ABS. Jim Sienicki, Mark Ohre, Bill Kastin, Deborah Dubree, and Daniel Esposito, concealed the modifications from Snell & Wilmer client and 90.9% owner of ABS, Will Graven.

Between 6/13/2011 and 2/21/2013, Snell & Wilmer attorneys continued to conceal the above-described activity by misleading Will Graven and the Court during a civil lawsuit and failing to preserve several emails, and documents."

***The Snell Parties were found to have committed criminal acts and were about to be prosecuted for such.***

8.) Snell Case suspect Daniel Esposito was charged in the Charging Papers for Conspiracy to Commit Fraudulent Schemes and Artifices **_with_** the Snell Parties (**Ex 14** pgs 2/3 Ref 1; and **Sec IIC-1d**).

"Count 1: FRAUDULENT SCHEMES AND ARTIFICES, in violation of A.R.S. 13-2310

In furtherance of this conspiracy and to effect the foregoing objects thereof, this defendant and their co-conspirators did commit numerous overt acts, including but not limited to the overt act of **engaging with outside corporate** counsel to change corporate documents without lawful authorization, in violation of A.R.S. 13-1003, 13-2310, 13-701, 13-702 and 13-801."

9.) The criminal forgery of the Snell Case Charging Approval Form in and of itself (*see* **Sec IIC-1b** just above) makes it obvious that Defendants were doing whatever they could think of/could do...legal or illegal...to exonerate the Snell Parties (i.e., criminal acts **_are not needed_** for honest purposes) (*per* **Sec IIC-1b**).

**IIC-1g: Conclusion to Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: Ending/Closing the Snell & Wilmer Criminal Investigation Letter/Form (Forged Record No 3)**

142. The Snell Parties were thoroughly investigated and approved to charged, as they were guilty as hell.

143. The Snell Parties have now been forged out of 3 AGO records that their (the Snell Parties') names should have appeared in, by the criminal acts of Defendants Conrad, Ahler and Waters.

144. Obviously, ending/closing the Snell Case was not based on Defendants' allegedly justifiable "decision to decline" charging the Snell Parties (as Defendants Lopez, Dangerfield, and others will later claim)... it was based on Snell's power and influence and Brnovich's need to exonerate the Snell Parties, and clean up any tell-tale evidence that there had ever been any real suspicion of the Snell Parties, *or that Defendants had exonerated the Snell Parties*.

145. The Ending/Closing the Snell & Wilmer Investigation Letter/Form is a forged fraud (as will be substantiated by its uses)*, and it was issued intentionally, strategically, based upon the forged Case Charging Approval Form (per* **Sec IIC-1b**) *and forged Charging Papers (per* **Sec IIC-1d**), *to create (forge) a false record* that that the AGO simply, justifiably, made the decision to decline charging the Snell Parties.

146. Why were criminal acts needed...if what Defendants were doing was legitimate?

147. Criminal acts **_are not necessary_** for honest purposes.

148. Defendants Conrad, Ahler and Waters committed these criminal acts to exonerate the Snell Parties (and they committed other criminal acts together with other Defendants as seen in **Ex's 13, 14, 15, 17, 25-31, 35** and **51**).

149. Conrad, Ahler and Waters, closed the Snell Case to continue exonerating the Snell Parties.

150. Oh, and not so clever, is that it was Conrad's last day as Chief of the Criminal Division that the Snell Case was closed...Ahler replaced Conrad as Chief of the Criminal Division the next day.

151. Defendants will use this forged Ending/Closing the Snell & Wilmer Criminal Investigation Letter/Form to support future criminal acts and defenses (e.g., when I sued them, they claimed there was insufficient evidence to charge the Snell Parties, so they closed the Case, claiming they justifiably "declined to charge" the Snell Parties).

152. Defendants exonerating the Snell Parties and covering their own criminal tracks for exonerating the Snell Parties, for an eventual fraudulent defense, continues with this 3rd AGO Forged Record (*see* the next 2 Forged Records [4th/5th Records] below as they are added to continue creating Defendants' foundation of forged frauds.)

**IIC-1h: Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: The "Affirmation of Ahler's Screening Memo" (AGO Forged Record No 4)**

153. My first effort in these matters began when I asked the Maricopa Country Court handling the criminal case of my former employees (cases Defendants were prosecuting, but will later dismiss to eliminate witnesses against the Snell Parties [e.g., **Ex 20** pg 2; and **Sec II-I**, which *see* reference to below] [several of these dismissed cases

*were actually of convicted felons* who had agreed to testify against the Snell Parties]), when I asked that Court to help me stop Defendants' "rampage" against me (rampage: firing investigators; closing cases; dismissing felons; removing my name as the Victim; etc) (*see* detail for Defendants' closing cases to further exonerate the Snell Parties, and cover their own tracks, in Supporting Acts **Sec II-I** Par 409 bullets 6-9 and 19-23).

154.   At that time (1-19-16), I filed three different Actions in that Maricopa County Court (**Ex's 32–34**).

155.   In my Emergency Motion for a Temporary Restraining Order, I claimed (**Ex 32**, pgs 1/2 Ref 1)**:**

"Then, a few days [later], the AG shut-down the 3 remaining cases that were ready for indictments and prosecution (one of those cases was the Snell & Wilmer case...that case was shut-down by Asst. AG Paul Ahler whose son works at Snell), please *see* Exhibits 2, 3 and 4)."

156.   **Defendants' Continue Intentional, Strategic, Manufacturing of Evidence:** A few days after I filed these 3 Actions, including my TRO that noted Ahler's son was an attorney at Snell, Defendant Zora Manjencich issued internal AGO Memo, reminding several parties that Ahler had been (**Ex 35** pg 1 Ref 1), Screened on 4-27-15 (the "Original Ahler Screening Memo" [**Ex 12**] was attached to this new Memo), affirming that Ahler was still Screened as of that date, 1-27-16, and that he would remain Screened (I will not directly see this new Memo for years).

157.   I call this new/Manjencich AGO Memo the "Affirmation of Ahler's Screening Memo."

158.   Defendant Manjencich's Memo is a forged fraud *and it was issued intentionally, strategically, **to create (forge) a false record** that Defendant Ahler had **really/really** been Screened on 4-27-15, and that he was yet **actually/really/really** Screened on 1- 27-16* (the date of this new Memo).

159.   Defendants now have *"**proof**"* by this new Memo: As Defendant Ahler had been and was yet Screened, he was ***never involved*** in any of my Cases and that my allegations of criminal acts by anyone at the AGO were silly.

160.   Defendants will use this forged Memo and what it claims in future pleadings to *"**prove**"* that Defendants did not commit criminal acts to exonerate the Snell Parties...as I alleged...***and they will be victorious by this fraud***.

161.   ***But we know this Memo is a forged fraud*** as it has been seen in AGO Records, e.g., *Ex 13 Par's 31-44 and Ex's 25-31 Par's 76-93, Ahler was **entirely involved** in my Cases, particularly the Snell Case, and that **at least 6** parties to this Affirmation of Ahler's Screening Memo are documented by Exhibits to have been working on my Cases **with Ahler** **behind that Screen**, **all along*** (i.e., since at least 7-16-15 when he signed the Charging).

162.   *To be clear...there is **real proof** that Defendants' claim that Ahler had been/was been Screened is a forged fraud: Ahler's signature on the Case Charging Approval Form is dated 7-16-15* (**Ex 13** pg 5 Ref 1) and **Ex's 25-31** (*per Par's 76-93*) *are also dated during that supposedly Screened period from 4-27-15 through 1-27-16.*

163*.  **Defendants created this forged record to "prove" that my allegations of their being involved in a criminal plan to exonerate the Snell Parties were just wild allegations from another Pro Se conspiracy theorist/nut.***

164. *Defendants created this forged Memo to defend themselves...they will repeatedly use it/what it represented.*

165. This new Memo *does properly reflect* criminal Arizona Conflict of Interest statutes, and Arizona case law on the same (ARS 38-510; *State v Latigue* [Ariz. 1972]; and the Az Agency Handbook Chptr 8) (**Ex 35** pg1 Ref 2):

"To avoid a **conflict of interest**, and **to avoid any appearance of impropriety**, Criminal Division Chief Paul Ahler is recused from the above-referenced matters and has been screened." (Bold underline by Plaintiff.)

166. This sounds wonderful.

167. *The sober reality is that these lofty sounding ideals describe exactly what Defendants were violating.*

### IIC-1i: Conclusion to Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: The "Affirmation of Ahler's Screening Memo" (Forged Record No 4)

168. The Affirmation of Ahler's Screening Memo is a forged fraud (as will be substantiated by its uses, which *see*), and it was issued intentionally, strategically, to create a bookend to Ahler's allegedly having been Screened (*per* the Original Ahler Screening Memo [Par's 24 and 25, **Ex 12**) during the time I was claiming that he and his Co-Defendants had criminally participated in exonerating the Snell Parties and then covered their own tracks.

169. Defendants will use the Affirmation of Ahler's Screening Memo as a part of their later defense that Ahler was Screened, and that the AGO simply, justifiably, made the decision to decline charging the Snell Parties.

170. When Defendants forged this Affirmation of Ahler's Screening Memo, they did not anticipate that I would (albeit, much) later obtain their records documenting that they continued to work with Ahler on my cases behind his being Screened (**Ex's 13, 14, 25-31,** and **35**), although he was Screened as *legally* required.

171. Defendants will use this forged Affirmation of Ahler's Screening Memo to support future criminal acts and defenses (e.g., when I sued them, they claimed there was insufficient evidence to charge the Snell Parties, so they simply closed the Snell Case, claiming they justifiably "declined to charge" the Snell Parties, which *see*).

172. Defendants exonerating the Snell Parties, and covering their own (Defendants') criminal tracks for exonerating the Snell Parties, for an eventual fraudulent defense, continues with this 4th AGO Forged Record (*see* the next/5th forged record below as it is added to continue creating Defendants' foundation of forged frauds).

### IIC-1j: Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: A Fraud Scheme to Break me Financially and Destroy my Standing (AGO Forged Record No 5)

173. From the time I walked into the AGO on 11-3-11, as described in Par 1, until 1-15-16 at 10:22AM, I was the listed Victim of the crimes my former employees committed against me (we will return to 10:22 below).

174. My name was listed as the Victim on the first Form, of the first investigation, what became the Graven Master Case. Please see **Ex 36:**

a.) at Ref 1, *see* Legal File No., or LF No. P-2011-2341 (this number is important to this **Sec IIC-1j**);

b.) at Ref 2, *see* Open Date: 11/3/2011 (as I have stated);

c.) at Ref 3, *see* a comment by the Assigned Agent Woods, that "On 11/3/2011 I was working as Duty Agent when William Graven walked into the Attorney General's Office to file a complaint;" and

d.) at Ref 4, *see* "William Graven (victim, reporting party)".

175.  As described in Par's 6/7, Subsidiary Investigations sprang from the first Graven Case, such **as Ex 37**, LF No P-2012-1134; **Ex 38**, LF No 2013-2449; and **Ex 39**, No 2015-0615 (Ex 39 is for the Snell & Wilmer Case).

176. Please see Ref 1 on each **Ex's 37, 38** and **39**: "(V) Graven William Andrew".

177.  Almost 4 years later, the Graven Master Case is still No P-2011-2341 (**Ex 40** pg 1 Ref 1[Note: 238 pgs]).

178.  When Victim's Statements were needed, it was me who gave them (e.g., **Ex's 41, 42** and **43,** all Ref 1).

179.  When restitution checks were issued, they were made to me (e.g., **Ex 44**).

180.  When Asst Chief Special Agent Woods completed a Summary/Report of "victim" Will Graven investigations (**Ex 45** pg 1 Ref 1), guess whose name appears...repeatedly?

181.  Remember the Original Ahler Screening Memo (Par's 24/25, **Ex 12**)? Note whose Cases Ahler was being Screened from: "Graven" (pg 1 repeated here as **Ex 46** pg 1 Ref 1). Please note the Case numbers, all my Cases.

182.  Remember the letters Defendant Waters wrote closing the Snell Case (**Ex 15**); the Victorville Case (**Ex 18**); and the Rubble Case (**Ex 19**)...who did he write to? William Graven.

**Note 6:** Defendants are so clever...the Snell & Wilmer Case was called just that (e.g., **Ex 39**), but when Waters wrote me to close the Case (**Ex 15**), he called it the "Outside Counsel Investigation P0022015000615." He used the right LF No, but changed the name of the Case.

183.  But on 1-14-16 at 2:58PM, criminal defendant Esposito's attorney, Scott Maasen, who was clearly good friends with then prosecutor/now Defendant Waters, filed a **Motion** for Determination of Victim's Rights (**Ex 47**).

184.  The very next morning, Waters, rather than, say, at some point within his 2 weeks file a Response to Maasen's Motion, and defend my more than 4 years as the Victim, or allow me the opportunity to defend myself as the Victim, immediately accepted Maasen's Motion, and removed me as the Victim (**Ex 17**).

185.  Please note the 2 Case Numbers on Maasen's Motion (**Ex 47** pg 1 Ref 1): CR2014-001649-002 and CR2015-002486-002...these are the Maricopa County Court criminal case numbers.

186. But the 2 case investigation numbers for these 2 Maricopa County criminal cases were P002-2013-000419 (**Ex 48 pg 1** Ref 1) and P002-2011-002341 (**Ex 48 pg 1** Ref 2), which are both cases I am listed as the Vitim of (**Ex 48 pg 1** Ref 3), ***long before*** Massen's Motion, or Waters instantly removing me as the Victim (**Ex 17**).

187.  The Charging Papers for P002-2011-002341 had their own number (**Ex 49**), as did the Charging Papers for CR2015-002486-002, the Snell Case Crimes (**Ex 14**).

188. I know from speaking with the woman (Marisol Villagran) who wrote this email (**Ex 17**), right after receiving

her email that morning, that Waters had been into her office that morning (Jan 15..just the morning after Maasen filed his Motion]), instructing her to remove me as the Victim, and write this email to me and (4 days later, I filed the 3 actions described in Par 153, noting with particularity **Ex 33**, my Request for a Determination).

189. This was one week after Waters wrote *me*, William Graven, as the Victim of the 3 Cases Defendants were Closing (**Ex's 15, 18** and **19**).

190. But wait! *Massen filed a Motion*...for a determination...his Motion was pending...his Motion *was not* a ruling by the Court!

191. But Waters, immediately, removed me as the Victim, *as he had been* "**notified**" (Ex 17 pg 2 Ref 1) I was not the Victim, and so stopped all Restitution, and tried to destroy my Standing as the Victim.

192. Defendants were clearly on a full-scale "rampage" against me (as I claimed earlier [Par 153]).

193. ***Obviously, Waters had asked Maasen to file his Motion as a favor to Waters, and Defendants were ready to accept Maasen's Motion, without hesitation...to immediately stop all restitution, and destroy my Standing.***

194. Oh, but wait...there's more...following my raising hell over Defendants' rampage (e.g., my 3 actions filled on 1-19-16, *per* **Ex's 32**, **33**, and **34** Par 153), the AGO sought to transfer my cases to the Maricopa County Attorney's Office (**Ex 49**) (Defendants Zora Manjencich, who had issued the Affirmation of the Ahler's Screening Memo on 1-27-16 [**Ex 35** Par 156], wrote this letter [dated 2-9-16]).

195. Please note (**Ex 49** pg 1Re 3)**:** "Re: Victim**:** William Graven".

196. So...Waters had removed my name as the Victim for receiving Restitution...but the rest of the AGO was stilling calling me the Victim (*see* Waters being cced).

197. I also note here that the AGO quit seizing and liquidating my former employees' assets that had been seized in the Asset Seizure Warrant (**Ex 1**) and paying those proceeds to me (*see* Supporting Acts **Sec II-I Par 3**).

**IIC-1k: Conclusion Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: A Fraud Scheme to Break me Financially and Destroy my Standing (Forged Record No 5)**

198. The Fraud Scheme to Break me Financially and Destroy my Standing is a forged fraud.

199. Defendants clearly had at least two motivations in this fraud scheme to remove me as the Victim**:**

A.) to break me financially, so I could not afford counsel, nor continue my efforts even on my own; and

B.) to destroy my Standing for any possible future action against them; the Snell Parties; or former employees.

200. As will be seen, Defendants, over the course of the next 6 years, and the past 4 Complaints I have filed, have regularly used my alleged lack of Standing as a defense (and they certainly made my life a financial disaster).

**IIC-1l (L): Conclusion to Factual Allegations for Defendants' Continuing Intentional, Strategic, Manufacturing of Evidence: The 5 Forged AGO Records**

201. *Defendants have now 5 AGO Forged Records to "defend" themselves with:*

i.) the "Snell Case Charging Approval Form" for the Snell Case Crimes (*per* Par's 31-44; and **Sec's IIC-1b**);

ii.) the "Charging Papers" for the Snell Case criminal acts (*per* **Sec IIC-1d**);

iii.) the "Ending/Closing the Snell & Wilmer Criminal Investigation Letter/Form" (*per* **Sec IIC-1f**);

iv.) the "Affirmation of Ahler's Screening Memo" (*per* **Sec IIC-1h**); and

v.) the "Fraud to Break me Financially and Destroy my Standing" (*per* **Sec IIC-1j**).

202. *These 5 AGO Forged Records created the foundation of Defendants' defense for criminally exonerating the Snell Parties, and covering their own criminal tracks for having exonerated the Snell Parties.*

203. Under Brnovich's instructions, Ahler managed the exoneration of the Snell Parties, and the covering of Defendants' tracks left as they criminally exonerated the Snell Parties.

204. Defendants covering their criminal tracks included shutting down everything to do with Will Graven receiving Justice/restitution for the criminal acts committed against me by my former employees (which *see* later as "Supporting Acts" **Sec II-I**) *was to Defendants' and Snell's own evil ends*...I was merely "collateral damage."

205. Defendants will use these 5 AGO Forged Records to support their future criminal acts and defenses (e.g., when I sued them, they claimed there was insufficient evidence to charge the Snell Parties, so they closed the Snell Case, claiming they justifiably "declined to charge" the Snell Parties, which *see*).

**IIC-2. FACTUAL ALLEGATIONS: DEFENDANTS USED THEIR "PROOF" (THE 5 AGO FORGED RECORDS) TO COMMIT FRAUDS ON THE ARIZONA SUPREME COURT, AND THEREBY BUILT FURTHER "PROOF" OF THEIR INNOCENCE BY THEIR "VICTORY" THERE, WHICH DEFENDANTS USED TO ADD ONTO THEIR FRAUDULENT FOUNDATION, AND TO BUILD-ON, TIME AND TIME AGAIN**

206. On 2-26-16, after the Maricopa County Judge I had filed the above 3 actions with (on 1-19-16) said she had no Jurisdiction over the AGO (**Sec IIC-1h** Par 153), I filed a Petition for a Writ of Mandamus with the Arizona Supreme Court (**Ex 50**), seeking an Order to compel the AGO to take the Snell Case to the Grand Jury (rather than let Ahler decide whether or not to present/close the Snell Case). In my Petition, I said (**Ex 50** pgs 1/2 at Ref 1):

"Attorney General Brnovich's Chief of the Criminal Division, Paul Ahler has a son, Collin Ahler, who works at Snell & Wilmer."

207. And (**Ex 50** pg 8 Ref 2):

"The Chief of the Criminal Division, Paul Ahler, has a son who works for Snell."

208. I reasoned that as the AGO had a Plea Agreement with Snell Case criminal Dubree, which described how the Snell Parties created/managed the Snell Case crimes, and Dubree had agreed to testify against the Snell Parties;

and the AGO had charged Esposito for Conspiring to Commit Fraudulent Schemes *__with the Snell Parties__*, and as the just previous Attorney General (who did not have a conflict with Snell, as Brnovich and Ahler did) had approved charging the Snell Parties...whether or not to charge the Snell Parties should be decided by the Grand Jury (not to mention, the conclusions contained in the other 6 of the 8 AGO records listed above in **Sec IIC-1b**).

209.  Defendant Lopez, as Solicitor General of the AGO, was tasked with responding to my Petition.

210.  Defendant Lopez used the 5 earlier described AGO Forged Records (**Sec's IIC-1b** through **1l (L)**, what I have called "Manufactured Evidence," as the foundation of his Response to the Arizona Supreme Court, creating 3 Major Frauds on that Court (and a number of lesser frauds, which *see* in **Sec IIC-3**), which Defendants will use time and time again, by Lopez swearing to the Supreme Court that (**Ex 51** pg 12 Ref 1)**:**

a.) That Ahler was Screened (*see* my inserted number *[1]* in the below quote from Lopez's pleading [**Ex 51** pg 12 Ref 1]) (his claim is obviously based upon Manjencich's forged Affirmation of Ahler's Screening [**Sec IIC-1h**]);

b.) That Defendant Ahler was not involved in the Snell Case (*see* number *[2]* inserted in two places in the below quote from Lopez's pleading) (partly based upon Manjencich's forged Affirmation Memo [**Sec IIC-1h**], and partly based upon 2 of the other 4 AGO Forged Records);

c.) The Snell Parties not being charged was the AGO's conscious decision to decline charging them (*see* my inserted number *[3]* in the below quote) (which Lopez was able to claim based upon Conrad, Ahler, and Waters' forged the Case Charging Approval Form [**Sec IIC-1b**] and the Charging Papers [**Sec IIC-1d**] [having removed the Snell Parties' names and participation]; and their forged Closing of the Snell & Wilmer Criminal Investigation Letter/Form [**Sec IIC-1f**]);

211.  Lopez lied to the Arizona Supreme Court:

"4 Petitioner insinuates that the current AGO Criminal Division Chief, Paul Ahler, *__(2) was involved__* in __the (3) decision to decline charges against the Snell and Wilmer attorneys__. *(2)* __Petitioner is mistaken__. __First, Ahler was not the Criminal Division Chief when the AGO__ *(2)* __declined charges against the Snell and Wilmer attorneys__. __Second, because Ahler's son is employed with Snell and Wilmer__ (__and even though his son is not implicated in this case__), *(1)* __the AGO screened Ahler from involvement in the investigation__."

212. Defendant Lopez used Defendant Manjencich's forged Affirmation of Ahler's Screening Memo to claim that Ahler had been Screened since 4-27-15 and that he (Ahler) was still Screened at that time I was alleging criminal acts (**Sec IIC-1h**), which made it possible for him (Lopez) to thereby claim that Ahler had not been involved and was still not involved  (*see* more lies Lopez created on his own below in **Sec IIC-3**).

213.  Manjencich's forged Affirmation of Ahler's Screening Memo, on top of the forged Case Charging Approval Form (**Sec's IIC-1b**); the forged Charging Papers for the Snell Case crimes (**Sec IIC-1d**); and the forged Ending/Closing the Snell Case Criminal Investigation Letter/Form (**Sec IIC-1f**), *__made it possible for Defendant Lopez to claim that the AGO simply/consciously made the decision to decline to prosecuting the Snell Parties__*.

214.  But Lopez's claims/lies contradicted Ahler's signature on **Ex 13**, and other, e.g., **Ex's 25-31**.

215.  These 3 Major Frauds (blatant lies) in Lopez's pleading contradict documented reality, such as the reality seen in **Ex's 13, 14, 15, 17, 25-31**, and are based on 3 of the 5 AGO Forged Records (*per* **Sec's IIC-1b, 1d** and **1f**).

216.  These Forged Records and Ex's document Defendants' coordinated criminal conspiracy to exonerate the Snell Parties and then cover their own criminal tracks from having exonerated the Snell Parties.

217.  *Ahler took part in completing the Case Charging Approval Form for the Snell Case crimes!* (**Ex 13**)

218.  *Ahler took part in completing the Charging Papers for the Snell Case crimes!* (**Ex 14**)

219.  Ahler was regularly involved in my cases (**Ex's 25-31** Par's 76-93).

220.  Ahler ran a meeting about the Snell Case in Defendant Bailey's office! (**Ex 31** Par's 87-89).

221.  Ahler was not only very involved...he clearly managed the exoneration of the Snell Parties!

222.  *How is that Ahler's being "Screened"?*

223.  *How is that Ahler's not being "involved"?*

224*. How is Ahler's working with multiple Defendants to exonerate the Snell Parties his not being involved?*

225.  *How is committing criminal acts to exonerate the Snell Parties a "decision to decline charges"?*

226.  ***An honest "decision to decline" charging the Snell Parties would not have required criminal acts***.

227.  ***How can Lopez claim that the Snell Case was honestly closed...when multiple criminal acts are documented to have been committed to close the Snell Case (and thereby "exonerate" the Snell Parties)?***

228.  For Defendant Lopez to swear to the Arizona Supreme Court that Ahler was Screened; that he (Ahler) was not involved; and that the AGO simply declined to charge the Snell Parties...and  claim that I am "mistaken" in my allegations, he (Lopez) would have had to run a search of AGO records himself, and/or have his assistant, Defendant Perkins do so (Perkins was CCed on both the Original Ahler Screening and the Affirmation Memos).

229.  And clearly, Lopez had accessed and read the Graven Master Case files, particularly the Snell Case, made obvious by his level of knowledge in his pleading when he filed the State's Response...***Lopez knew the truth***.

## IIC-3. FACTUAL ALLEGATIONS FOR DEFENDANT LOPEZ CREATING FRAUDS OF HIS OWN FOR THE SUPREME COURT...AND REFUSING TO TAKE REMEDIAL ACTION FOR HIS FRAUDS

230.  Defendant Lopez's Response (**Ex 51**) to my Petition for a Writ of Mandamus is filled with almost countless Frauds on the Court...frauds which added to the foundation of Defendants' fraudulent/repeated defenses.

231.  I will examine just a few of Lopez's "lesser" frauds here.

232.  Lopez, apparently, could not wait to use the above Forged Records to create a morass of Frauds on the Supreme Court, to confuse that Court, and prevent the Court from being able fairly adjudicate my Petition.

233.  And so Lopez committed his first fraud ***in just the second paragraph of his Response*** (**Ex 51** pg 7 Ref 2):

"In fact, one of those civil lawsuits involved claims **against three attorneys** at Snell & Wilmer, **the same claims**

he now asks this Court to order the Attorney General **to prosecute as *criminal* offenses**." (Italics by Lopez)

234.  Let me be really clear on 3 of Lopez's claims/frauds in this one sentence:

a.) I have never asked AG Brnovich, nor anyone else, to criminally prosecute (or investigate) civil claims from that Complaint; and

b.) I have never asked AG Brnovich, nor anyone else, to prosecute (or investigate) Snell & Wilmer attorneys for civil claims that were in my Civil Complaint against a different group of 3 Snell attorneys for different matters from my Civil Complaint years earlier;

c.)  the set of three Snell attorneys I filed a complaint against years earlier had nothing to do with what AGO found years later (I knew nothing about the acts AGO investigators found years later, which *see*).

235.  What I was simply asking the Arizona Supreme Court for was right on page 1, where the "Cause of

Action" is normally located:

**"VICTIM'S AND VICTIM'S LEGAL REPRESENTATIVE'S PETITION FOR A PREEMPTORY WRIT OF MANDAMUS TO ORDER THE ATTORNEY GENERAL TO PRESENT THE RESULTS OF THE ABOVE THREE INVESTIGATIONS TO THE GRAND JURY"**

236.  Lopez, later in his pleading, doubled down on his Fraud on the Court regarding his claim that my civil

Complaint was against the same three Snell attorneys (**Ex 51** pg 8 Ref 3):

"Specifically, the AGO declined to prosecute **the three Snell and Wilmer attorneys** because, after **redundant review by multiple career prosecutors**,[1] the office **determined that it did not possess sufficient evidence of criminal misconduct** to create a reasonable likelihood of conviction."

237.  This statement will also be shown to be full of bold face lies and Frauds on the Court (or, rather, it already

has, by the contents of this Complaint).

238.  Footnote [1] to Lopez's just above paragraph states:

"[1] To date, **the evidence has been reviewed by four attorneys**, each with more than 15 years of prosecutorial experience."

239.  By Lopez claiming that four career prosecutors had reviewed the evidence, ***when they didn't even know*** that

their investigating criminal Special Agents repeatedly explained in multiple investigation Reports that my Civil

Complaint and the criminal acts described in their criminal Reports ***are not at all the same claims***, demonstrates

that Lopez lied to that Court...***he just made up his claim of career prosecutors reviewing this Case***.

240.  Lopez lied to the Arizona Supreme Court when he claimed no case was to be made, *see* the 8 AGO records

discussed above in **Sec IIC-1b** that concluded that Dubree, Esposito and the Snell Parties committed criminal acts

together, and *see* the below parties in **Note 7** who "voted for" prosecution.

**Note 7:** I, *Will Graven,* under penalty of perjury: The just former Az Attorney General; former Asst AG; former Chief of the Criminal Division; former Chief Prosecutor; former Chief of Special Investigations; former lead Agent on the Snell Criminal Investigations, who was the son of a former 35 year Deputy Sheriff, and a former Deputy Sheriff himself, then a Special Agent for the FBI, then a Covert Operations Officer for the CIA; several

investigators at the AGO; several prosecutors for the AGO...*__all saw crimes that they thought should have been prosecuted...and actually approved prosecuting the Snell Parties for...but that it was Defendants who exonerated the Snell Parties.__*

**Note 8:** Stating the obvious, once again: Snell Case criminal defendant Dubree pled guilty to the Snell Case crimes (**Ex 10**) and criminal suspect Esposito was charged for Conspiring *__with__* the Snell Parties (**Ex 14**).

241. Lopez is lying against reality: His anonymous "4 career prosecutors" against the 8 AGO Records in **IIC-1b**, including Dubree's Plea Agreement; Esposito having been charged for Conspiring *__with__* the Snell Parties; and the parties in **Note 7** who supported charging the Snell Parties...and that Defendants have 5 AGO Forged Records, and repeatedly committed Frauds on the Court.

242. Lopez and his Co-Defendants have no credibility for being truthful...to the contrary, they are documented and repeat liars.

243. Lopez then drew the conclusion that as my Civil Complaint was dismissed, and I now Petition for an Order forcing AG Brnovich to prosecute these the same three attorneys for the same claims as my Civil Complaint, but now as criminal offenses, *and* that as his exhaustive review of the evidence revealed no wrong-doing, my Petition is therefore old news and already dismissed news, and should therefore be denied..

244. Obviously, what Lopez was trying to do with this fraud was create *Res judicata* for my Writ of Mandamus (another "lesser" Fraud on that Court).

245. However, as I stated just above, had Lopez and his four career prosecutors actually reviewed either the Snell Case Written Report (**Ex 8**) or the PowerPoint Report (Ex 9), they would have known my years earlier civil Complaint and the AGO's criminal investigation were not related (e.g., **Ex 8** on pg 1 Ref 1):

"In 2/2011, Will Graven discovered the red-flag emails, and in 6/2011, Will Graven filed a civil lawsuit against Snell & Wilmer (**the civil lawsuit was limited to the red-flag emails because Will Graven had not yet discovered the scheme to alter the ABS shareholders' agreement**). During the civil action, Snell & Wilmer misled the court, withheld discovery, and continued to conceal the true history, nature, and scope of its relationship with Will Graven. Consequently, the case was later dismissed with prejudice."

246. Turning to Asst Chief Woods' PowerPoint Report (**Ex 9**), at 7 minutes 45 seconds into the PowerPoint, at slide 12 (**Ex 52** [does not include audio, of course, which *see* **Ex 9** for audio]), Woods states:

"As a result of those red-flag emails Will Graven filed a civil lawsuit against Snell & Wilmer.
And we'll go into some detail about what that lawsuit included and how Snell & Wilmer responded to that lawsuit.

**But it's very important to understand now that the lawsuit filed in 2011 was limited to the red-flag emails.**

**It had nothing to do with the conspiracy to takeover ABS.**

**In fact, when Will Graven filed this lawsuit against Snell & Wilmer, he didn't even know about the conspiracy to takeover ABS.**

**That wasn't discovered until about April of 2014** as Will Graven and investigators were reviewing thousands of emails and other documents that were collected pursuant to the other investigations."

247.  So, in fact...when I filed my civil Complaint in 2011, I did not know of the takeover plan that AGO investigators and prosecutors wanted to charge 3 Snell attorneys and Snell as law firm for in 2014.

248.  ***So, in fact...Lopez lied to the Arizona Supreme Court, again...and he lied against his own investigators.***

249.  Lopez was seeking to create *Res judicata*, and pass Statutes of Limitation, with his Fraud on the Court that the AGO's criminal investigation was for the same allegations as those in my years earlier civil Complaint...and he lied to try to do this.

250.  Also interesting...apparently, Lopez is saying the AGO used its resources to investigate my same old civil claims...and then decided not to prosecute them? (Lopez has been caught lying 6 ways till Sunday).

251.  I filed my Reply to his fraud-filled Response (**Ex 53**), explaining his many misrepresentations, and that he needed to take remedial action to correct those "errors."

252.  I wrote him about taking remedial action for his frauds (**Ex 54**).

253. I filed a Complaint with the Arizona Supreme Court regarding his refusal to take remedial action (**Ex 55**).

254. I filed a Complaint with the Arizona Bar regarding his refusal to take remedial action (**Ex 56**).

255.  Lopez refused to take remedial action for his "errors"...***in other words, he meant to lie when he drafted his Response***.

256.  Lopez also swore to the Arizona Supreme Court (**Ex 51 pg 8 Ref 4**):

"The Petition is replete with **erroneous factual assertions**, **meritless allegations of corruption and retaliation**, conclusory legal statements, **and speculation concerning the investigation and deliberative process**. The AGO **denies all such assertions and accusations**."

257.  Now that we can see behind the AGO's curtain, we see that these the things I kind of suspected/ alleged were happening when I filed my Petition...***were in fact happening*** (**Ex's 13, 14, 15, 17, 25-31, 35** and **51**):
a.) Defendant Ahler was criminally violating his Screen;
b.) Defendants were breaking laws as they worked behind Ahler's Screen with him;
c.) Defendants were in fact breaking the law to exonerate the approved-for-charging Snell Parties;
d.) Defendants were in fact breaking the law to over their tracks from having exonerated the Snell Parties;
e.) Defendants forged Records to support their efforts;
e.) Defendants have repeatedly committed Frauds on the Courts to "defend" themselves.

258.  And Lopez will repeatedly claim that I was merely unhappy/dissatisfied that the AGO failed to charge parties I thought/believed/wanted/desired should be charged (**Ex 51** throughout):

"However, the AGO could not do everything Petitioner wanted." (**Ex 51** pg 7 Ref 5)

"Petitioner is dissatisfied with the Attorney General's exercise of prosecutorial discretion..." (**Ex 51** pg 11 at Ref 6)

"Petitioner's grievance is that the AGO did not charge all of the individuals Petitioner desired to be charged." (**Ex 51** pg 16 Ref 7)

**Note 9:** These will be favorite frauds of Defendant attorney Dangerfield in future defenses against my Complaints.

259.  Lopez will repeatedly wax eloquent re prosecutorial discretion (**Ex 51** throughout):

"Petitioner's personal dissatisfaction with the Attorney General's exercise of **his prosecutorial discretion** in a criminal investigation hardly raises an issue of statewide importance that requires prompt resolution." (**Ex 51** pg 15 Ref 8)

260.  Lopez will repeatedly claim the AGO simply, honestly, after substantial review, made the decision to decline

charging the Snell Parties because there was just no case to be made (**Ex 51** throughout)**:**

"the *(3)* **decision to decline** charges against the Snell and Wilmer attorneys." (**Ex 51** pg 12 Ref 8)

261.  And:

"Petitioner's dissatisfaction with the AGO's decision to charge only 9 of 12 potential subjects following it investigation, based upon its exercise of prosecutorial discretion following a multi-year investigation, provides no basis for this Court to venture into the province of executive's prosecutorial judgment." (**Ex 51** pg 24 Ref 9)

262.  Lopez will repeatedly assure the Supreme Court that there was no corrupt activity (**Ex 51** throughout):

"Neither Petitioner's dissatisfaction with the outcome of the investigation, **nor his meritless allegations of influence**, even remotely justify his extraordinary request that this Court supplant its judgment for the Attorney General's in the exercise of **prosecutorial discretion**." (**Ex 51** pg 26 Ref 10)

263.  And:

"The Petition is replete with erroneous factual assertions, **meritless allegations of corruptio**n and retaliation, conclusory legal statements, and speculation concerning the investigation and deliberative process. The AGO denies all such assertions and accusations." (**Ex 51** pg 8 Ref 4)

264.  Least we forget his Lopez's first 3 Major Frauds on the Court as examined above in **Sec IIC-2** Par 209:

"4 Petitioner insinuates that the current AGO Criminal Division Chief, Paul Ahler, *(2)* was involved in the decision to *(3)* decline charges against the Snell and Wilmer attorneys. *(2)* Petitioner is mistaken. First, Ahler was not the Criminal Division Chief when the AGO *(2)* declined charges against the Snell and Wilmer attorneys. Second, because Ahler's son is employed with Snell and Wilmer (and even though his son is not implicated in this case), *(1)* the AGO screened Ahler from involvement in the investigation."

265. Lopez was the chief architect of Defendants' fraudulent foundation, which they will use for years.

266. *Lopez's entire pleading was one big continuous Fraud/deception on the Arizona Supreme Court...and*

*his frauds/deceptions became the foundation of Defendants' future repeated fraudulent defenses (which see).*

**IIC. CONCLUSION TO FACTUAL ALLEGATIONS FOR DEFENDANTS' "MANUFACTURED (FORGED) EVIDENCE" AND THE FOUNDATION THAT FRAUDULENT "EVIDENCE" CREATED**
267.  Defendants had the records that documented their corrupt and criminal acts (**Ex's 13**, **14, 15, 17, 25-30, 35**).

They knew what they had done...but they lied to the Arizona Supreme Court...creating "precedents" if you will.

268.  With this first fraudulent victory in the Arizona Supreme Court, by these very powerful and persuasive frauds, Defendants, including attorney Mark Dangerfield, will repeatedly use this fraudulent "success" and Frauds on the Court in defending themselves in my following Complaints against them (**Sec's IID-H**).

269. Defendants then built upon "success" after "success," repeatedly claiming Ahler had been Screened; that Ahler had not been involved in the Snell Case nor any other Graven Cases; and that the AGO had simply declined to charge the Snell Parties...and that everything I was alleging was just lunacy from another crazed Pro Se conspiracy nut...*and that I was just upset because the AGO failed to charge the Snell Parties I "felt," "wanted" or "believed" should have been charged.*

270.  These frauds were overwhelmingly material, and amongst the most damaging Frauds on the Court Defendants created/forged...and every Court believed the Defendants...***and I could not overcome their frauds***.

271.  *Therefore, it is reasonable to say that Defendants entire years of defenses against my feeble Pro Se efforts have been built on Forged Records, Frauds on the Court(s), and by supposedly in-Court vindication.*

272.  ***Said somewhat differently: none of Defendants' past "victories," were based on the merits, or reality... their victories and successes have been built on the frauds of Forged Records and Frauds on the Courts.***

273.  Defendants knew they had committed corrupt and criminal acts as they exonerated the Snell Parties, and so began to cover their (Defendants') own tracks for committing those criminal acts. They knew they needed to use as many of their clever tricks as possible (especially as they began to realize certain of their errors in their criminal efforts, and as evidence they had been concealing slipped through to the public domain).

274.  ***Defendants using earlier frauds as later defenses is not allowable...not since Booth v Lord Warrington (1694-1695) has an English Court; an American Colonial Court; or a US Court, accepted a defendant pleading a defense based on his/her/their own fraud.***

275.  ***And in Defendants' efforts to exonerate the Snell Parties, and cover their (Defendants') own criminal tracks...they robbed me of Justice and my life...and they stained the sanctity of our Justice System.***

276.  Because fraud/other deceptive acts are exceptions to *Res judicata,* it is voided here. And then, actually, my Complaints and Defendants' defenses to date are actually nonexistent/did not occur (e.g., *Riehle v Margolies).*

277.  Fraud and other deceptive acts on the Court have no Statutes of Limitation (e.g., *Valerio v Cascade Corp*).

## IID: FACTUAL ALLEGATIONS FOR CASE SPECIFIC ACTS VOIDING *RES JUDICATA* AND STATUTES OF LIMITATION: *MY FIRST COMPLAINT* AGAINST CERTAIN OF THE DEFENDANTS

278.  On April 26, 2016, I filed a Complaint in this Court (CV-16-01249-PHX-GMS), based on what evidence I had at that time (Defendants were refusing records requests from me), and my own suspicions.

279.  I was hoping to obtain additional records in discovery, as Defendants had been denying my requests.

280. Defendants were (**Ex 57**): State of Arizona; Gov Doug Ducey; Dpt of Attorney General; AG Mark Brnovich; Asst AG Michael Bailey; (Former) Chief of the Criminal Division Don Conrad; (Current) Chief of the Criminal Division Paul Ahler; Asst AG Joe Waters; and John and Jane Doe's I-X.

281. I was only able to have the State; the AGO and AG Brnovich; and the Governor, Served.

282. I was not able to Serve AGO officials Bailey, Conrad, Ahler and Waters, as Brnovich as Attorney General does not allow any officer and/or employee being Served at the AGO (**Ex's 21-24**, and **Sec III** below).

283. I alleged violations of Due Process, and Equal Protection, as it seemed obvious to me that Defendants had refused to charge the Snell Parties because of Brnovich and Ahler's ties to Snell & Wilmer; that attorneys seemed to rarely be charged for anything; and who Snell is well known to be (the "evil empire," in legal circles).

284. I reasoned that as the AGO had a Plea Agreement with Snell Case criminal Dubree, who described how the Snell Parties created/managed the Snell Case crimes, and Dubree had agreed to testify against the Snell Parties; and the AGO had charged Esposito for Conspiring to Commit Fraud Schemes ***with the Snell Parties***, and as the just previous Attorney General (who did not have a conflict with Snell, as Brnovich and Ahler did) had approved charging the Snell Parties, not to mention the conclusions contained in the 8 AGO records listed in **Sec IIC-1b**, whether to charge the Snell Parties or not should been decided by the Grand Jury rather than Brnovich/Ahler.

285. I tried Effective Service for Bailey, Conrad, Ahler and Waters, which the State fought, and was denied as moot as my Complaint was dismissed due to the 11th Amendment, and also, for failure to state a claim, as Defendant Dangerfield characterized my Complaint by Lopez's Response: I was disappointed the State failed to charge someone I felt/believed/wanted charged...and that characterization stuck.

286. I entirely misunderstood the 11th Amendment, leading to my case being largely dismissed for that  (I mistakenly included the State, and State officials, as defendants [but then, Defendants were concealing records]).

287. Defendants were easily able to "defend" themselves as they were concealing **Ex's 13, 14, 17, 25-30, 35**, which documented what was actually going on behind the AGO curtain: Defendant Ahler was criminally involved with his Co-Defendants in exonerating the Snell Parties, and Defendants were covering their own tracks for those exonerating Snell (concealing these particularly probative records is a violation of Due Process, and criminal).

288. Defendants "defense" claimed (defs' mtn to dsmss **Ex 58**) (*see* Lopez's frauds, in word/spirit, throughout)**:**

A.)  prosecutorial discretion, stating that the AGO had "merely" made the "legitimate" decision to decline charging the Snell Parties as it was clear that the Snell Parties' acts had not risen to the level of being criminal;

B.)  that if the Az Supreme Court could not take jurisdiction, neither could a US District Court (pg 7 lns 19-27);

C.)  that I was merely unhappy that they had failed to charge the Snell Parties, whom I believed/felt should be/wanted charged.

289. But the reality of what had happened, and what was happening, is that Defendants were then, even at that time, committing a series of criminal acts to exonerate the Snell Parties, and cover their own tracks, such as dismissing convicted criminals who were to testify against the Snell Parties (*see* Supporting Acts **Sec II-I**).

290. Defendants repeatedly committed fraud on/deception on Judge Snow by concealing records, and hiding behind prosecutorial discretion and the 11th Amendment...when what they had done and were doing was criminal.

291. The foundation Defendants had laid by concealing records, creating the 5 AGO Forged Records described above, and Lopez's fraud-filled Response, well served them in "defending" themselves against my first Complaint.

292. At this time, Defendants were "defending" themselves with this fraudulent foundation they had laid by:

A.) concealing the records that documented their criminal acts, noting with particularity **Ex's 13, 14, 17, 25-30, and 35** (concealing these particularly probative records is a violation of Due Process, and is criminal);

B.) concealing the truth (by multiple means) of their having criminally "exonerated" the Snell Parties;

C.) using forged records ("Manufactured Evidence") such as the 5 AGO Forged Records described in **Sec IIB** including the Case Charging Form (**Sec IIB-1b**) and the Affirmation of Ahler's Screening Memo (**Sec IIB-1h**);

D.) benefiting from their having removed my name as the Victim (**Sec IIC-1j**) of crimes committed against me by former employees, as I was no longer receiving restitution, I was thereby forced into losing counsel, and living like a vagabond, while trying to mount a Pro Se effort for Justice (I was first broke by my employees' crimes, and then by Defendants removing me as the Victim of the crimes by my former employees [I had been receiving and was living off the substantial restitution I was receiving from those former criminal employees]);

E.) benefitting from their putting my Standing into question by having removed my name as the Victim of crimes committed against me by former employees, by the Snell Parties, and themselves (Defendants) (**Sec IIC-1j**);

F.) benefitting from their fraudulently obtained "victory" in the Arizona Supreme Court, which was based on Defendants Manjencich's Affirmation Memo (**Sec IIC-1h**) and Lopez's fraud filled Response (**Sec IIC-2**);

G.) benefitting from their Supporting Acts (*see* **Sec II-I**) such as by threatening witnesses;

H.) benefitting from/abusing the power and credibility of the Attorney General's Office;

I.) by A-H, Defendants were able to commit Frauds and deceptions on the Court, both by the actual content of what they were able to claim in their fraud-filled Motion to Dismiss, and by what they concealed;

J.) abusing the 11th Amendment, which is for State sovereignty, which is not meant to be a shied from behind which State officers and employees can be enabled/protected to commit criminal acts;

K.) having a field-day with my Pro Se incompetence, and so abusing the essence of our Justice System.

293. Defendants could have come clean, but they used our State as a gauntlet for their criminal behavior.

294. Defendants, particularly Dangerfield, as he drafted their motion to dismiss, abused the respected AGO, used his/their cleverness, and by the above bullets, bastardized our Justice System (my Complaint was dismissed).

295. The result of Defendants' concealing records, frauds, deceptions, and other errant acts, was a false judgment.

296. I continued my efforts to obtain AGO records through my use of "Alternate Sources" (*per* **Note 3** pg 8).

297.  Several months later I obtained 2 more concealed AGO records that I thought were smoking guns: the Original Ahler Screening Memo (**Ex 12**), and Case Charging Approval Form (**Ex 13**).

298.  I did not realize that these 2 newly obtained records documented Defendants committing criminal acts.

299.  I simply filed a Motion for Relief (**Ex 59**), based on this new evidence (**Ex's 12** and **13**).

300.  Defendant Dangerfield lied to Judge Snow using for the first time what later became his "Two Forms Fraud" (Ex 60 Lns 7-28 ) (*see* a detailed explanation of this Two Forms Fraud in Sec II-H-4), claiming that charging Esposito in the Case Charging Approval Form that Ahler had signed (one of my new pieces of evidence) had nothing to do with the Snell & Wilmer Criminal Investigation (Ex 60 pg lns 19/20).

301.  But clearly, Defendants realized these 2 records documented criminal acts...as their Response (**Ex 60**) to my Motion was so fraud-filled, I filed a Motion for Sanctions (**Ex 61**) and a Motion for Default Judgment (**Ex 62**).

302. Defendants should have come clean at this point, but they didn't, they doubled down on and became ever more more criminal...such as dismissing cases, including against convicted criminals, such as Dubree, who pled guilty to the Snell Case crimes, and Esposito, who they charged for conspiring with the Snell Parties. (Why did they dismiss guilty pleas by convicted criminals? To eliminate witnesses against the Snell Parties [*see* Supporting Acts **Sec II-I**].)

303.  My Motion for Relief was denied (Defendants' frauds worked once again),

304.  This was the beginning of Defendants not just resting on their laurels of the 5 AGO Forged Records, and Lopez's fraud-filled Response filed with the Az Supreme Court...they proactively began lying in Court proceedings.

305. Defendants will cheat on Lady Justice, steal Justice from me...and steal the past almost 6 years of my life.

## IIE: FACTUAL ALLEGATIONS FOR CASE SPECIFIC ACTS VOIDING *RES JUDICATA* AND STATUTES OF LIMITATION: *MY SECOND COMPLAINT* AGAINST CERTAIN OF THE DEFENDANTS

306.   Having obtained even more, and very powerful evidence, and in light of my Complaint having been dismissed in Judge Snow's Court for the 11th Amendment (which I really understood very little about [which I will prove, more than once]), I went to Arizona State Court and filed a new Complaint (**Ex 63**, CV2018-007856) (my Complaint was assigned a Judge who came from the defendants' attorney's [Dangerfield's] law firm).

307. Defendants were basically the same for this new Complaint (**Ex 63**): the State of Arizona; Gov Doug Ducey; Dpt of Attorney General; AG Mark Brnovich; Asst AG Michael Bailey; (Former) Chief of the Criminal Division Don Conrad; (Current) Chief of the Criminal Division Paul Ahler; and Asst AG Joe Waters.

308.  My allegations were a stronger version of what I had filed in Judge Snow's Court, as I had the additional evidence mentioned just above, but I was not yet able to allege criminal acts.

309.  Once again, my process server was not able to Serve Bailey, Conrad, Ahler, and Waters.

310.  I asked that State Judge to Order Service on these 4 defendants.

311.  But that Judge would not Order Service, and so I had to once again amend their names out of my Complaint.

312.  A few months into this action, I obtained additional AGO records (from my "Alternate Sources" [*per* **Note 3** on pg 8]) that made it clear even to me, Defendants had committed criminal acts to exonerate the Snell Parties.

313.  I made a presentation at a Hearing (the one Hearing I have had in almost 6 years and 4 Complaints), outlining Defendants' criminal acts as I best knew them at that time (**Ex 64**), based on the yet limited evidence I had.

314.  Judge Contes was visibly shaken by the evidence (she clearly knew some the parties involved).

315.  Attorney Dangerfield, as the then defendants' counsel, was also visibly shaken by the evidence.

**Note 10:** The records I had obtained and presented in that Hearing, which documented criminal acts by those parties, were records that Dangerfield had long had access to.

316.  Following that Hearing, I wrote Dangerfield asking when he would be reporting defendants acts (**Ex 65**).

317.  Dangerfield refused to take action, including remedial action for his past representations (I will ask again 1 year later, but still no action [**Ex 66**]).

318.   Due to the records/evidence I had been able to add to this 2nd action, Defendants became more concerned with the potential of their being caught, and so they stepped-up their Frauds on the Court.

319.  I tried to keep that Court abreast of Defendants increasing Frauds on the Court (**Ex's 67, 68** and **69**).

320.  The State Court Judge Dismissed my case quoting the State's attorney, saying nothing about the criminal criminal acts I alleged or the records that documented those criminal acts.

321.  Defendants "defended" themselves by claiming (defs' mtn to dsmss **Ex 70**):

A.)  prosecutorial discretion, stating that the AGO had "merely" made the "legitimate" decision to decline charging the Snell Parties as it was clear to them that the Snell Parties acts had not risen to the level of being criminal;

B.)  that as prosecutors, they are above the law:

1.) In Defendants' Response to my Motion for Relief Due to Court Error for not Granting my Motion for Summary Judgment, filed 5/20/19 (**Ex 71** pg 4 Ref 1)**:**

"In addition, Plaintiff lacks standing to bring his claims because he has not pled and cannot prove that the alleged actions of the AGO – **even if they were criminal**."

2.) In Defendants' Reply to my Rspnse to Defs' Mtn to Dsmss, filed 1/14/19 (**Ex 72** pg 4 Ref 1)**::**

"First, as discussed in our Motion to Dismiss, the case law makes clear that prosecutors have absolute immunity for decisions as to whether or not to initiate a prosecution, **bad motives or not**."

3.) In their Response to my Motion for Reconsideration, filed 5/7/19 (**Ex 73** pg 5 Ref's 1 and 2):

**"C. It is well-settled that prosecutors have absolute immunity in deciding
whether or not to initiate a prosecution, *regardless of their motives*."**

C.)  that if the Az Supreme Court could not take jurisdiction over this matter, neither could a State Court;

D.) I was unhappy that they had failed to charge the Snell Parties, whom I believed/felt should be/wanted charged;

E.) that my new Complaint in State Court was the same as what I had filed in Federal Court (which was not true), and as that Complaint was dismissed, so to should this one;

F.) Dangerfield formalized his "Two Forms Fraud" here (*see* **Sec II-H-4**), claiming the Snell Case investigation started a year later that it did, so reversing the meaning of certain Forms as different than what I claimed;

G.) Dangerfield claimed Defendants dismissing admitted/convicted criminals was proof that nothing bad had ever happened to me (**Ex 70**, Sec B; *see* Supporting Acts **Sec II-I** Par's 407-409 bullets 6-9 and 19-23).

322. But the reality of what had happened, and what was happening, is that Defendants were then, even at that time, committing criminal acts to exonerate the Snell Parties, and to cover their own tracks, such as dismissing convicted criminals who were to testify against the Snell Parties (*see* Supporting Acts **Sec II-I**).

323. Defendants repeatedly committed fraud on/deceptions Judge Contes, by concealing records, and hiding behind prosecutorial discretion...when what they had done and were doing was criminal.

324. The foundation Defendants laid by earlier creating the 5 AGO Forged Records described above, and Lopez's fraud-filled Response, well served them in defending themselves against my second Complaint also.

325. At this time, Defendants were defending themselves with this fraudulent foundation they had laid by:

A.) concealing the records that documented their criminal acts, noting with particularity **Ex's 13, 14**, **17, 25-30,** and **35** (concealing these particularly probative records is a violation of Due Process, and criminal);

B.) concealing the truth (by multiple means) of their having criminally "exonerated" the Snell Parties;

C.) using forged records ("Manufactured Evidence") such as the 5 AGO Forged Records described in **Sec IIB** including the Case Charging Form (**Sec IIB-1b**) and the Affirmation of Ahler's Screening Memo (**Sec IIB-1h**);

D.) benefiting from their having removed my name as the Victim (**Sec IIC-1j**) of crimes committed against me by former employees, as I was no longer receiving restitution, I was thereby forced into losing counsel, and living like a vagabond, while trying to mount a Pro Se effort for Justice (I was first broke by my employees' crimes, and then by Defendants removing me as the Victim of the crimes by my former employees [I had been receiving and was living off the substantial restitution I was receiving from those former criminal employees]);

E.) benefitting from their putting my Standing into question by having removed my name as the Victim of crimes committed against me by former employees, by the Snell Parties, and themselves (Defendants) (**Sec IIC-1j**);

F.) benefitting from their fraudulently obtained "victory" in the Arizona Supreme Court, which was based on Defendants Manjencich's Affirmation Memo (**Sec IIC-1h**) and Lopez's fraud filled Response (**Sec IIC-2**);

G.) benefitting from their Supporting Acts (*see* **Sec II-I**) such as by threatening witnesses;

H.) benefitting from/abusing the power and credibility of the Attorney General's Office;

I.) by A-H, Defendants were able to commit frauds on/deceptions the Court, both by the actual content of what they were able to claim in their fraud-filled Motion to Dismiss, and by what they concealed;

J.) abusing the 11th Amendment, which is for State sovereignty, which is not meant to be a shied from behind which State officers and employees can be enabled/protected to commit criminal acts;

K.) having a field-day with my Pro Se incompetence, and so abusing the essence of our Justice System.

326.  Defendants could have come clean, but they used our State as a gauntlet for their criminal behavior.

327. Defendants, particularly Defendant Dangerfield as he drafted their Motion to Dismiss, based upon the respected AGO, their cleverness, and by the above bullets, including concealment, bastardized our Justice System.

328.  The result of Defendants' concealing records, frauds, deceptions, and other errant acts, was a false judgment.

329. Defendants cheated Lady Justice, stole Justice from me...and stole the past almost 6 years of my life.

## IIF: FACTUAL ALLEGATIONS FOR CASE SPECIFIC ACTS VOIDING *RES JUDICATA* AND STATUTES OF LIMITATION: *MY THIRD COMPLAINT* AGAINST CERTAIN OF THE DEFENDANTS

330.  I continued searching for evidence, and several months later I obtained what were/are clearly smoking guns: AGO internal records documenting 6 Defendants committing, in concert with one another, criminal acts.

331.  These new AGO records documented full-blown criminal activity by 10 of 11 Defendants.

332.  With that new evidence having been obtained, I came back to this Court to file a new Complaint (my Third Complaint), believing that the overwhelming amount of evidence I had then, including a copy of Plea Agreement the AGO had signed with one of the Snell Case criminal defendants, I had enough to establish an exception to the 11th Amendment (the 6 officers had committed criminal acts to "exonerate" the Snell Parties), (not realizing the 11th protects state officials even when they commit criminal acts).

333.  I thought the new evidence I had obtained would convince my Judge to see beyond the 11th Amendment.

334.  So I filed a new Complaint in this Court (2:19-cv-04586-SPL) (**Ex 74**).

335.  Defendant was simply the State (I was not yet understanding the 11th Amendment), nor could I believe that documented criminal acts by State AGO officers would not somehow "pierce" the 11th Amendment veil.

336.  I did not name the 6 officers in my new Complaint, as I knew I would not be able to have them Served.

337.  I explained this  service issue to Judge Logan, suggesting that if he felt I needed to take leave to Amend these 6 back into my Complaint, that when he issued the Order for me to take leave to amend, he also issue an Order for the US Marshalls to Serve the 6 officers, as no one but the Marshalls could find/Serve the 6.

338.  Defendants "defended" themselves by claiming (defs' mtn to dsmss **Ex 75**):

A.)  prosecutorial discretion, stating that the AGO had merely made the "legitimate" decision to decline charging the Snell Parties as it was clear to them that the Snell Parties acts had not risen to the level of being criminal;

B.)  that if the Az Supreme Court could not take jurisdiction over this matter, neither could a US District Court;

C.)  that I was unhappy that they had failed to charge the Snell Parties, whom I believed/felt/wanted charged;

D.)  That my first Complaints in Federal Court and in State Court, were the same as what I had now filed in Federal Court (which was not true), and as those 2 Complaint were dismissed, so too should this one (so *Res judicata*).

339.  The foundation Defendants laid by earlier creating the 5 AGO Forged Records described above, and Lopez's fraud-filled Response, well served them in defending themselves against my first Complaint.

340.  At this time, Defendants were defending themselves with this fraudulent foundation they had laid by:

A.)  concealing the records that documented their criminal acts, noting with particularity **Ex's 13, 14, 17, 25-30**, and **35** (concealing these particularly probative records is a violation of Due Process, and criminal);

B.)  concealing the truth (by multiple means) of their having criminally "exonerated" the Snell Parties;

C.)  using forged records ("Manufactured Evidence") such as the 5 AGO Forged Records described in **Sec IIB** including the Case Charging Form (**Sec IIB-1b**) and the Affirmation of Ahler's Screening Memo (**Sec IIB-1h**);

D.)  benefiting from their having removed my name as the Victim (**Sec IIC-1j**) of crimes committed against me by former employees, as I was no longer receiving restitution, I was thereby forced into losing counsel, and living like a vagabond, while trying to mount a Pro Se effort for Justice (I was first broke by my employees' crimes, and then by Defendants removing me as the Victim of the crimes by my former employees [I had been receiving and was living off the substantial restitution I was receiving from those former criminal employees]);

E.)  benefitting from their putting my Standing into question by having removed my name as the Victim of crimes committed against me by former employees, by the Snell Parties, and themselves (Defendants) (**Sec IIC-1j**);

F.)  benefitting from their fraudulently obtained "victory" in the Arizona Supreme Court, which was based on Defendants Manjencich's Affirmation Memo (**Sec IIC-1h**) and Lopez's fraud filled pleading (**Sec IIC-2**);

G.)  benefitting from their Supporting Acts (*see* **Sec II-I**) such as by threatening witnesses;

H.)  benefitting from/abusing the power and credibility of the Attorney General's Office;

I.)  by A-H, Defendants were able to commit Frauds on the Court, both by the actual content of what they were able to claim in their fraud-filled Motion to Dismiss, and by what they concealed;

J.)  abusing the 11th Amendment, which is for State sovereignty, which is not meant to be a shied from behind which State officers and employees can be enabled/protected to commit criminal acts;

K.)  having a field-day with my Pro Se incompetence, and so abusing the essence of our Justice System.

341.  Defendants could have come clean, but they used our State as a gauntlet for their criminal behavior.

342.  I tried to keep that Court abreast of Defendants increasing Frauds on the Court (**Ex's 76** and **77**).

343. Defendants, particularly Dangerfield as he drafted their Motion to Dismiss, based upon the respected AGO, their cleverness, and by the above bullets, including concealment, bastardized our Justice System... my Complaint was dismissed by the 11th Amendment and Judge Logan repeating Dangerfield's frauds, such as failure to charge...

344.  The result of Defendants' concealing records, frauds, and other errant acts, was a false judgment.

345.  Defendants cheated Lady Justice, steal Justice from me...and steal the past almost 6 years of my life.

## IIG: FACTUAL ALLEGATIONS FOR CASE SPECIFIC ACTS VOIDING *RES JUDICATA* AND STATUTES OF LIMITATION: *MY FOURTH COMPLAINT* AGAINST CERTAIN OF THE DEFENDANTS

346.  Believing that Mark Brnovich was the root of the injustices that I had suffered, I filed a new Complaint in this Court (CV21-01391-PHX-MTM).

347. Defendants were (**Ex 78**): Mark Brnovich, both as Attorney General for the State of Arizona and himself individually/personally.

348. While Defendant Brnovich and the AGO are known for not accepting Service for AGO officers and/or employees, a representative for Brnovich did accept Service, both as AG and individually/personally.

349. My Complaint was again Dismissed for the 11th Amendment, and for *Res judicata*.

350. Defendant Brnovich "defended" himself by claiming (defs' mtn to dsmss **Ex 79**):

A.) prosecutorial discretion, stating that the AGO had "merely" made the "legitimate" decision to decline charging the Snell Parties as it was clear to them that the Snell Parties acts had not risen to the level of being criminal;

B.) that if the Az Supreme Court could not take jurisdiction over this matter, neither could a US District Court;

C.) that I was merely unhappy that they had failed to charge the Snell Parties, whom I believed/felt should be/wanted charged.

D.) that my first Complaint in Judge Snow's Court; my Complaint in State Court; and my Complaint in Judge Logan's Court were the same as what I had now filed in Federal Court (which was not true), and as those 3 Complaint were dismissed, so to should this one (so *Res judicata*).

351. Brnovich repeatedly committed Fraud on Judge Morrissey's, by concealing information, and hiding behind prosecutorial discretion and the 11th Amendment...when what he had done and were doing was criminal.

352. The foundation Brnovich laid by earlier creating the 5 AGO Forged Records described above, and Lopez's fraud-filled Response, well served him in defending himself against this Complaint also.

353. At this time, Brnovich was defending himself with this fraudulent foundation he had laid by:

A.) concealing the records that documented his/his Co-Defendants criminal acts, noting with particularity **Ex's 13, 14, 17, 25-30,** and **35** (concealing these particularly probative records is a violation of Due Process, and criminal);

B.) concealing the truth (by multiple means) of their having criminally "exonerated" the Snell Parties;

C.) using forged records ("Manufactured Evidence") such as the 5 AGO Forged Records described in **Sec IIB** including the Case Charging Form (**Sec IIB-1b**) and the Affirmation of Ahler's Screening Memo (**Sec IIB-1h**);

D.) benefiting from their having removed my name as the Victim (**Sec IIC-1j**) of crimes committed against me by former employees, as I was no longer receiving restitution, I was thereby forced into losing counsel, and living like a vagabond, while trying to mount a Pro Se effort for Justice (I was first broke by my employees' crimes, and then by Defendants removing me as the Victim of the crimes by my former employees [I had been receiving and was living off the substantial restitution I was receiving from those former criminal employees]);

E.) benefitting from their putting my Standing into question by having removed my name as the Victim of crimes committed against me by former employees, by the Snell Parties, and themselves (Defendants) (**Sec IIC-1j**);

F.) benefitting from his fraudulently obtained "victory" in the Arizona Supreme Court, which was based on Defendants Manjencich's Affirmation Memo (**Sec IIC-1h**) and Lopez's fraud filled pleading (**Sec IIC-2**);

G.) benefitting from Supporting Acts (**Sec II-I**) he/his Co-Defendants committed such as threatening witnesses;

H.) benefitting from/abusing the power and credibility of the Attorney General's Office;

I.)   by A-H, Brnovich was able to commit Frauds on the Court, both by the actual content of what he was able to claim in their fraud-filled Motion to Dismiss, and by what he concealed;

J.)   by A-I, and past victories, Brnovich was to claim Res judicata and Statutes of Limitation;

K.)   abusing the 11th Amendment, which is for State sovereignty, which is not meant to be a shied from behind which State officers and employees can be enabled/protected to commit criminal acts;

L.)   having a field-day with my Pro Se incompetence, and so abusing the essence of our Justice System.

354.  Brnovich could have come clean, but he continued using our State as a gauntlet for his criminal behavior.

355. My Complaint was dismissed, including, by Judge Morrissey citing my years earlier civil Complaint against Snell, and the issue of my standing (Snell's rewriting of my Standing is one of the crimes they were approved to be charged for...as well as having lied in that civil Court). Judge Morrissey was deceived by Dangerfield's frauds.

356.  The result of Defendants' concealing records, frauds, deceptions, and other errant acts, was a false judgment.

## II-H: FACTUAL ALLEGATIONS FOR CASE SPECIFIC ACTS VOIDING *RES JUDICATA* AND STATUTES OF LIMITATION: *THIS FIFTH COMPLAINT* AGAINST CERTAIN OF THE DEFENDANTS

357.  So, here I am, for a fifth effort.

358.  Defendants have had multiple opportunities (obviously, in their fighting my many efforts) to reverse their many fraud schemes, violations of Due Process and Civil Rights...but instead, Defendants chose to allow me to run in circles like a chicken with my head cut off...stealing almost 6 years of this cardiac patient's life.

359.  Defendants forged/Manufactured Evidence.

360.  Defendants committed multiple Frauds/deceptions on the Courts.

361.  Defendants concealed the truth (which has now been shown).

362.  Defendants have voided any claim to Res judicata and/or Statutes of Limitation.

363.  For the first time, I am here able to tell the whole (most of?) story of what Defendants have done to Justice.

## II-H-1. FACTUAL ALLEGATIONS FOR WHAT DEFENDANTS' THEN ATTORNEY DANGERFIELD (NOW DEFENDANT) KNEW, AND MORE, BUT REFUSED TO ADMIT AND REPORT

364.  The Brnovich cabal used an attorney who is willing to do anything to defend his clients, including repeatedly lie to Courts (as seen in various pleadings of his, and my needing to file motions for sanctions et al); conceal the documented truth (which he had access to); use Manufactured Evidence; look away from the documented criminal acts of his clients, refusing to report their acts, as he is required to as a defined "employee" of the State, not follow follow the Rules of Civil Procedure, such as refusing to take remedial action; and not follow case law that requires the honest, admission of having lost in a civil case, such as the preeminent case for such matters in Arizona, *James Cooke and Hobson v Lake Havasu Plumbing and Fire Protection* (which I reminded him of several times).

## II-H-2. FACTUAL ALLEGATIONS FOR DEFENDANT DANGERFIELD HAVING HID HIS CLIENT'S CRIMINAL ACTS, REFUSING TO REPORT THEM

365.  Included in Dangerfield frauds on the Court(s), is that he has known, by AGO records, at least since 2-22-19 (if not early 2016 when he first started representing the State et al in these matters, and would have done his "reasonable inquiry" [representing Defendants in my First Complaint]), that his clients had committed criminal acts.

366.  While what is criminal by a jury and what is not, is tough to predict, that is not the standard by which Dangerfield is required to report by, the Arizona Agency Handbook, requires even suspected criminal activity, **Ex's 13, 25-30** are clearly at least suspected criminal activity (these Ex's actually, clearly, document criminal activity).

367.  I say he has known of his clients' criminal acts since by at least 2-22-19 (*per* Par ___) as that is the day at a hearing in the Court of Arizona State Judge Connie Contes (my Second Complaint), we discussed their criminal acts in detail (**Ex 64** here, and/or watch the hearing on youtube at youtube.com/watch?v=MUqIZbc4WCM).

368.  I wrote Dangerfield and his senior partner reminding them of their duty to report suspected criminal activity, but they did not report as required (**Ex's 65** and **66**). Nor did they report such to the Arizona Bar.

369. On more than one occasion, I tried to get Dangerfield to take remedial action for claims he made, be it from false information he was provided, or his just plain lying...when new information became available.

370.  I would ask him for remedial action in such instances as when I obtained new AGO records by my Alternate Sources (records/information he had access to as defendants' counsel, but did not act on), and used those new records in our legal proceedings, and those records documented something substantially different than he had represented it to be, I would then ask him to take the required remedial action...but he would not (e.g., **Ex 74**).

371.  Dangerfield filed numerous error and/or fraud-filled pleadings, to which I would inform him of his error... but he refused to correct his "errors" (resulting in my filing several motion for sanctions in various instances).

## II-H-3. FACTUAL ALLEGATIONS FOR SOME OF DEFENDANT DANGERFIELD'S FAVORITE FRAUDS

372.  Much to my chagrin, and heartbreak, I have learned that Judges believe attorneys more readily than people who represent themselves (I have never found a more dishonest bunch than litigation attorneys).

373.  For instance, in the Arizona State Court of Judge Connie Contes (**Ex 63**), I filed a Complaint (not yet with all the evidence I now have). My Complaint alleged that after a year-long investigation by the AGO (under the just previous AG), the 6 Snell suspects were approved for criminal charging. I explained that AGO documents showed that Paul Ahler was Screened, but that he, with 5 others, criminally "exonerated" the Snell Parties.

374.  Once again, my process server was not able to Serve Bailey, Conrad, Ahler, and Waters.

375.  Dangerfield fought my efforts there for Effective Service (for the officials I could not serve).

376.  I did not allege their acts were criminal in that Second Complaint, as I was yet short a record or two to make that allegation stick...and, when I filed that Complaint, I did not have any knowledge of criminal law.

377.  Dangerfield claimed my Complaint was based on the State's "failure" to charge the Snell Parties whom I felt/believed should have been/wanted charged, which was his playing off my first Complaint in Judge Snow's Court (before I obtained some of the records Defendants had been concealing and I was then using in that Court).

378.  Dangerfield heavily played off of what Judge Snow had ruled, although the content of my First and then Second Complaints were very different (in part, as I had obtained much more evidence for my second Compliant).

379.  However, as described above in **Sec II-H-2** Par's 365/367, by 2-22-19, I had learned something of criminal law, particularly Conflict of Interest law, and I detailed these 6 officials' criminal acts (*per* Par's 312/313 **Ex 64**).

380.  Dangerfield ignored, and then lied about, what my new Complaint was actually about, the Hearing, and the new evidence I introduced.

381.  *As Dangerfield fought me with his Frauds and deceptions on the Courts, he knew Defendants had committed criminal acts to exonerate the Snell Parties...and that they (Defendants) were concealing the records I needed to complete the picture/story of what Defendants had done.*

382.  Judge Contes dismissed my Complaint by quoting Dangerfield, ruling that my Complaint was about the State's failing to charge the Snell Parties....she said nothing about the evidence I introduced, or the criminal acts we discussed in the 1 hour 15 minute hearing we had in her Court, in which I detailed the criminal acts (**Ex 64**) that the 6 AGO officials had committed (*see* youtube.com/watch?v=MUqIZbc4WCM).

383.  Defendant Dangerfield's Frauds on the Court had worked again, this time on Judge Contes' Court.

384.  Then, with ever more evidence obtained, I came back to this Court, after experiencing that I was not going to receive an honest opportunity in State Court against the State (and for Federal Causes of Action).

385.  My Complaint in Judge Logan's Court stated (my Third Complaint), from the get-go, in detail (**Ex 71** Par's 4, and 14-45 and Ex's 6/7 and Par's 46-49 and Ex's 10-16), that Brnovich 6 Ago accomplices had committed multiple criminal acts against me as they exonerated the Snell Parties (**Ex 71**).

386.  But Dangerfield again claimed, again using my first action in Judge Snow's Court (First), and then his fraudulent success in Judge Contes Court (Second Complaint), he claimed my Complaint was for my waning/feeling/belief the Snell Parties should have been criminally charged, and that the AGO had failed to do so (**Ex 72**).

387.  There is no such language in my Complaint in Judge Logan's Court...my Complaint was about the criminal acts the 6 officials committed on Defendant Brnovich's behalf.

388.  Judge Logan cited the 11th Amendment, but also quoted Dangerfield...saying:

"Plaintiff brought this cause of action against the State of Arizona for monetary damages based on the failure to indict Snell & Wilmer, a local law firm, and some of its partners for alleged criminal acts."

389. *It does not say this in my Complaint as filed in Judge Logan's Court...but it is what Dangerfield claimed.*

390. Dangerfield's Fraud on Judge Logan's Court had achieved his intended goal: he frustrated Justice.

391. I am yet baffled that the 11th Amendment cannot be penetrated for State officials committing criminal acts.

392. As a side note, I explained to Judge Logan that Defendants Brnovich did not allow me to Serve his 6 AGO officials/cabal at the AGO...and that if I had errored in not trying again to name and Serve these 6 officials, who had acted on behalf of Brnovich, and actually committed the criminal acts that injured me, and so if I needed to take leave to Amend them back in, that he also include in his order that the US Marshalls Serve these 6 as no one but the Marshalls could find and serve them (he did not respond to this).

## II-H-4. FACTUAL ALLEGATIONS FOR ONE MORE OF DANGERFIELD'S FAVORITE FRAUDS: "THE TWO FORMS FRAUD"

393. In Judge Contes Court (Second Complaint), I was explaining to that Court why and when the Snell Criminal investigation had been opened, some details of the investigation, and that approval had been given by the then Attorney General (Tom Horne) to criminally charge Snell itself as a firm, 3 of its attorneys, and 2 other parties.

394. In that explanation, I introduced two Forms, which are **Ex's 2** and **3** here  (note these Forms effective dates: **Ex 2** is April 22 of 20**15** and **Ex 3** is April 28 of 20**15**) (*see* Par's 6 and 7 to understand these Forms).

395. Dangerfield lied to that Court, perfecting his "Two Forms Fraud" (which he first used in Judge Snow's Court) claiming these Forms were nothing more than "an authorization to investigate" (**Ex 70** pg 8, **Sec A** Ref 1).

396. *This fraud was critical to Dangerfield's success: as, by lying about these Forms, he could then say the 6 officials' criminal acts were not really exonerating any approved for criminal charging Snell Parties.*

397. Dangerfield lied his away around the meaning/validity/importance of these Two Forms, although:

a.) it is well documented that these forms are used for opening new investigations, *or* separating subsidiary investigations from a Master Case, as in this instance, these Forms were being used to separate the Snell Case from the Graven Master Case (Par's 6/7 and Ex's);

b.) it is well documented that the Snell Case crimes were first discovered in April of 2014 (almost 13 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 9);

c.) there is an Asset Seizure Warrant in the Public Domain, from late April 2014, that describes the initial findings of the Snell Case investigations (12 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par's 9 and 10 and Ex's);

d.) it is well documented that the then Attorney General, in April of 2014, gave approval to criminal charge Snell and 3 of its attorneys if the initial findings were substantiated (almost 13 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 11/12);

e.) it is well documented that the Arizona Grand Jury served Snell with a Subpoena in September of 2014 (almost 8

months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par's 12/13);

f.) it is well documented that Snell refused to respond to the Subpoena...in September of 2014 (almost 8 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par's 12/13);

g.) it is well documented that the AGO went to Court in October of 2014 and obtained a Court Order instructing Snell to turn over the materials described in the Subpoena (almost 7 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 13);

h.) it is well documented that Snell would not allow its attorneys being interviewed, in 2014 (Par 13);

i.) it is well documented that when Snell finally turned over the materials described in the Subpoena, in early November of 2014, it was only a few days later when after looking through the Snell materials, that investigators and the prosecutor on the case found the materials that substantiated their initial findings (almost 6 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 13);

j.) it is well documented by mid-November of 2014, final approval was given to charge the Snell Parties (almost 6 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 13);

k.) it well documented that investigators and the prosecutor on the Snell Case began drafting their final Written Report by mid-November 2014 to be used as the case was presented to the Grand Jury (almost 6 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 14);

l.) it well documented that investigators and the prosecutor on the Snell Case began creating a PowerPoint Report in early January 2015 to be used as the case was being presented to the Grand Jury (almost 5 months before Dangerfield claims an investigations was approved by his Two Forms Fraud) (Par 14);

m.) it well documented that by 4-22-2015, Snell Case suspect Deborah Dubree had signed a Plea Agreement, describing how the Snell crimes came to be, and agreeing to testify against the Snell Parties (Par 18 Ex 10);

n.) finally, as investigators and the prosecutor on the case were going to the Grand Jury, they needed separate case numbers (separate from the Graven Master Case), and so brought **Ex's 2** and **3** to Don Conrad for his signature, at which time new case numbers were issued, and the Snell Case became a sand-alone case (standing alone from the Graven Master Case, as was policy at the AGO, and as been seen several times in my cases) (Par's 6/7/18);

398.  Please note, a part of Dangerfield's Two Forms Fraud is that he makes a big-to-do (**Ex 70** pg 8 lines 13 and 17) that the Form must be signed "*before*" and that no investigation can begin "until" the Form is signed.

399.  What Dangerfield lied his way around was that the Graven Master Case had been authorized by the previous Criminal Division Chief on 11-3-11...on another Form...and again, that these Forms are also used to separate subsidiary investigations from Master Case investigations, which often happens, and is what happened here... so Conrad merely signed these Two Forms to authorize separate numbers from the Graven Master Case for the Snell Case as it headed to the Grand Jury (I filed a Motion for Sanctions for this Fraud **Ex 67**, and then again in my Appeal to the Ninth Circuit for my Third Complaint in Judge Logan's Court **Ex 74**).

400.  It is also worth noting that admitted criminal Deborah Dubree signed her Plea Agreement on 4-22-15, days before these Forms were signed, and that Esposito was *charged shortly after these two Forms were signed.*

## II-H-5. FACTUAL ALLEGATIONS FOR THE CONCLUSION TO THIS DANGERFIELD SECTION

401.  I believe I have shown this Court how cleverly Defendant Dangerfield built on my first Complaint in this Court...and how following Courts accepted that decision and Dangerfield's frauds and deceptions, although in Judge Logan's Court I was alleging detailed criminal acts, as I then finally had the factual evidence.

402.  So, Dangerfield has crafted his "winning defenses" based on Forged Records, Manufactured Evidence, and Lopez's fraudulent pleading, provided him by Defendants, and Dangerfield's lying about what my Complaint says.

403.  Yes, I am point-blank stating that attorney Mark Dangerfield is a bold face liar and a fraud...and if this Court is interested, and willing to set a Hearing in this mater, in but a few minutes I can show how he repeatedly committed Fraud and other deceptive acts on the Court(s) to defend this Brnovich cabal.

404.  Dangerfield committed many more frauds/deceptions than I have briefly described here.

405.  *Dangerfield's entire defense, for the past 5 years plus, is not a house of cards, but a house of frauds.*

406.  *Defendants' possible claim for Res judicata and/or Statutes of Limitation, just based on Defendant Dangerfield's frauds alone, are voided.*

## II-I.  FACTUAL ALLEGATIONS FOR DEFENDANTS' "SUPPORTING ACTS" (aka: criminal acts to exonerate the Snell Parties cover their own tracks) WHICH ALSO VOIDED *RES JUDICATA* AND STATUTES OF LIMITATION AND WHICH ALSO INJURED ME

407.  In addition to Brnovich's "policies" as described throughout, Defendant committed a series of acts which I have called "Supporting Acts." The purpose of those acts was to support their completely  "exonerating" the Snell Parties, and to cover their own tracks...as Defendants could not leave, say, criminal defendant Deborah Dubree, who pled guilty to the Snell Crimes (**Ex 10**, the 3rd set of pgs 3 and 4), and had agreed to testify against the Snell Parties, describing how Snell created and managed committing the Snell Case crimes, while not charging the Snell Parties (see bullet 4. below); or have criminal defendant Daniel Esposito, who was charged for conspiring **with** the Snell Parties (**Ex 14**, pgs 2 and 3), continue to be prosecuted, and implicate and testify against the Snell Parties, as he had agreed to do (see bullet 5 just below).

408.  The below list includes countless violations of Due Process and Sec 1983 by Defendants:

1.)  Defendants removed my name as the Victim of all of the charged cases and investigations (7 cases/investigations at the time), including completed cases for several former employees of mine, who had already pled guilty; and were paying restitution, which caused me to immediately lose restitution  (*see* **Sec IIC-1j**);

2.)  Defendants removed my name as the Victim of all of the charged cases and investigations in an attempt to destroy my Standing to prevent my taking action against them, or the Snell Parties (*see* **Sec IIC-1j**);

3.)  Defendants stopped seizing and liquidating assets to my benefit based on a $45m Lien against 10 former employees (*see* **Sec IIC-1j**); 8 of whom had been charged; 5 of whom had pled guilty; a 9th had signed a Plea Agreement; and the 10th had completed negotiating a Plea Agreement, and was about to sign it;

4.)   After the first and third bullets here, I could no longer afford an attorney (Defendants knew my finances, or lack of, so suffocating my ability to retain counsel and continue my efforts was likely a part of their intention);

5.)   Defendants closed the Snell & Wilmer Criminal Investigation (**Ex 15**); although at the time, he had admitted criminal Dubree's Plea Agreement (**Ex 10**); and they had charged criminal defendant Esposito for conspiring to commit Fraudulent Schemes and Artifices **_with_** the Snell Parties (**Ex 14** pgs 2/3);

6.)   Defendants dismissed criminal case CR2015-002486-002 (Ex 21, again, pgs 2 and 3) against Daniel Esposito (**Ex 20**, *see* the series of black dots on pg 2 at 1/12/17), which is the case in which he was criminally charged for the Snell & Wilmer crimes. Esposito had agreed to testify in the Snell Case, and all other cases, as Esposito was the main point of contact for the Snell Parties in those crimes, as he was my in-house general counsel and personal attorney. (Comment: This Exhibit calls the Snell & Wilmer Criminal Investigation the "Outside Counsel Investigation"...but on all other documentation for the investigations, for 1 ½ years, it was called the Snell & Wilmer Criminal Investigation It was in December of 2015, when word spread that criminal defendant Esposito was coming in to testify, including against the Snell Parties, *all hell broke lose* within the AGO.);

7.)   Defendants dismissed a second case of mine against Daniel Esposito (**Ex 20**, *see* the series of black dots on pg 2, at 1/12/17): CR2014-001649-002; Esposito's agreeing to testify in the Snell Case also was to have also resulted in favorable treatment for his crimes in this case;

8.)   Defendants dismissed two cases of mine against Deborah Dubree (**Ex 20**, *see* the series of black dots on pg 2, at 1/12/17): CR2014-001649-006; P0022015000615 (this is the Case Dubree was investigated in for the Snell Case crimes, and then Pled Guilty to); Dubree had signed her Plea Agreement...1 and ½ years earlier, and was to testify in the Snell Case, and all other cases (Dubree was personal friends with Snell Party suspect Jim Sienicki, and is who Dubree asked for help from, which started the Snell crimes moving); Dubree was a former Senior Vice-President of certain of my companies;

9.)   Defendants dismissed a case of mine against the City of Victorville Case (**Ex 20**), Criminal Investigation P0022014002355; this Case was ready to be sent to the Grand Jury; this Case involved executives of mine working with City of Victorville Officials forging a Sales and Purchase Agreement for $70m worth of aircraft hangars I had built for and sold to the City of Victorville, CA. The basic forgery defrauded me of $8.5m, plus damages done to me by not receiving that $8.5m. The AGO planned to use the same 2 provision proposal with the City of Victorville as they were going to use with Snell & Wilmer (i.e., fire the complicit employees/officials, settle with Graven, and the AGO would not charge the City), because the Victorville crimes included city Officials. (Yes, I had a perfect storm: crooked executives who sought-out other crooked parties to commit criminal acts with.);

10.)   Defendants dismissed a case of mine called the Emery Rubble Case (**Ex 19**), Criminal Investigation Case No.: P002201001134; this Case was ready to be sent to the Grand Jury; one of the defendants of this Case was to be an important witness in the Victorville Case, and all other cases; the damages in this Case were known to be at least $500,000;

11.)   Defendants fired (**Ex 31** Par's 161-164) the Assistant Chief of the Special Investigations Section and Special Agent Dan Woods (Woods had just been approved for the largest raise permissible). Woods is a former Special Agent with the FBI and Covert Operations Officer for the CIA, who had moved back to Arizona as his Mother was terminally ill;

12.)   Defendants then began refusing all Public Records Requests regarding my cases.

13.)   Defendants denied my right to a Meet and Confer under ARS 13-4406(B) for his dismissing my cases;

14.)   Defendants then removed my longtime Prosecutor from my cases (Joe Waters).

15.)   Defendants fired SA Lauren Buhrow, the lead agent for the third of my cases that was closed, Case No.:  P-

2013-1134, known as the Emery Rubble Case (she was also 2nd most active agent on all my cases);

16.) Defendants demoted the other/second Assistant Chief of Special Investigations, Dr. Charles Loftus (and the third agent who worked on my cases), and Dr. Loftus was told it would be best if he moved on;

17.) Defendants demoted SA Mike Edwards, the fourth agent who worked on my cases, and he was transferred out of the Special Investigations Section;

18.) Defendants told and threatened the fired, demoted and transferred Agents, with being sued and put on the Brady List if they were to talk about my cases publicly (e.g., **Ex 16** Par 153);

19.) Defendants dismissed two case of mine against Michael Martin (**Ex 20**, *see* the series of black dots on pg 2, at 1/12/17): CR2015-002486-001; CR2014-001649-001; Martin, as the former President of several of my companies, was the "ringleader" of the "crime family" that had formed within my companies, involving several employees, as is now obvious;

20.) Defendants dismissed a case of mine against Michael Groh: CR2014-001649-005 (**Ex 20**, *see* the series of black dots on pg 2, at 1/12/17); Groh had pled guilty and signed his Plea Agreement, which included his testifying in all other cases, several months earlier; Groh was my former Chief Financial Officer, and knew how the "Martin Crime Family" had moved my funds; assets; and businesses from my companies;

21.) Defendants dismissed a case of mine against Pamela Johnson CR2014-001649-003 (**Ex 20**, *see* the series of black dots on pg 2, at 1/12/17); she had agreed to "roll-over;" Johnson was my Controller (under Groh);

22.) Defendants dismissed a case of mine against Scott Hesse: CR2015-006239-001 (**Ex 20**, *see* the black dot on pg 2, at 12/14/16); his Plea Agreement had been signed, which included his testifying in the Snell Case, and all other cases, and paying restitution to me; Hesse was a Senior Vice-President of several of my companies;

23.) Defendants dismissed a case of mine against Marc Stricker: Criminal Report P0022015000920; his Plea Agreement was complete and ready for signature (this would have included Stricker testifying in the Snell Case, and all other cases, and paying restitution) (Woods' Aff **Ex 7** at Par's 58; 143; 144; 150; 153; 167; 168d; 169; 198); Stricker was a Senior Vice-President of several of my companies;

24.) Over 100 interviews had been conducted in the above investigations; dozens of search warrants had been executed; and over 10 terabytes of evidence collected; over a 4 year period, by several Special Agents;

25.) There were additional investigations underway, that were also closed;

26.) Defendants Manufactured evidence...(per **Sec II**);

27.) Defendants recently refused to investigate the documented criminal acts of ...themselves (I recently reported their acts to the AGO);

28.) There is much more to tell, but I believe it is clear: Defendants were getting rid of anyone and anything, that could add to the Snell & Wilmer Case being completed.

409. ***This is certainly an example of the cover-up having become worse than the acts the cover-up was intended to cover.***

## III. SUMMARY OF FACTUAL ALLEGATIONS: *RES JUDICATA* AND STATUTES OF LIMITATION

410. Defendants' countless Frauds and deceptions on the Courts, and other acts causing false Judgments, as I alleged, detailed, and gave real proof of, and their documented criminal acts ("documented" by their own records), have caused a domino effect of voiding Defendants' past defenses to my efforts for Justice/my Complaints.

411.  Defendants began their fraudulent efforts by first forging AGO records; then concealing records; then filing a fraud-filled Response with the Arizona Supreme Court...to add that "victory" to their foundation of frauds for defenses then, and the future (these acts were a part of exonerating the Snell Parties and covering their own tracks).

412. Because fraud/other deceptive acts are exceptions to *Res judicata,* it is voided here. And then, actually, my Complaints and Defendants' defenses to date are nonexistent/did not occur (e.g., *Riehle v Margolies).*

413.  Fraud and other deceptive acts on the Court has no Statutes of Limitation (e.g., *Valerio v Cascade Corp*).

414.  Because Fraud and other deceptive acts on the Courts have no Statute of Limitation, and each of Defendants' succeeding defenses was built on previous frauds, none of Defendants' defenses can be seen as yet on the record.

415.  ***Defendants using earlier frauds as later defenses is not allowable...not since Booth v Lord Warrington (1694-1695) has an English Court; an American Colonial Court; or a US Court, accepted a defendant pleading a defense based on his/her/their own fraud.***

416.  Defendants have no claim to *Res judicata* or Statutes of Limitation.

## III.  FURTHER TO THIS COMPLAINT, BY FACTUAL ALLEGATIONS

417.  Plaintiff further alleges the following;

418.  Rule 4.1 of the Arizona Rules of Civil Procedure is for Service. This Rule forcefully mandates the Court's goal of defendants readily accepting Service, to, in part, eliminate the games played to evade Service. In fact, Rule 4.1 requires that Courts impose all costs for Service on a defendant who is unwilling to Waiv[ing]e Service. The Court has included a legal obligation for costs for potential defendants in Rule 4.1:  "...has a <u>duty</u> to avoid unnecessary expense in serving the summons." The Federal Rule for Service is essentially the same.

419.  The Arizona Agency Handbook (the State's Employee Manual, authored by Defendant Brnovich) reflects the Court's mandate and goals in Rule 4.1, stating that officers or employees should (normally) Waive Service, even quoting Rule 4.1 to emphasize that: "In fact, there is a "duty to avoid unnecessary costs" of Service:

"13.2.3 Waiver of Service. The State and state entities (such as agencies, boards, commissions or departments) <u>as well as individual state officers or employees</u> may (and <u>normally</u> <u>should</u>) waive personal service of process if the plaintiff makes a proper request under Arizona Rule of Civil Procedure 4.1(c). <u>In fact, there is</u> "<u>a duty to avoid unnecessary costs of serving the summons</u>." Ariz. R. Civ. P. 4.1(c)(2)." (Underline by Plaintiff.)

420.  Further to Service in the Agency Handbook, Brnovich have authored that "only by one of three methods" of Service is acceptable by him for one of his officers or employees to be Served:

"13.2.2.3 Personal Service of Summons and Complaint on an Individual. Personal service on individual state officers or employees can be accomplished <u>only by one of three methods</u>: **(1)** by delivering the necessary documents to the named individual; **(2)** by leaving the documents at the individual's home with a person who both lives there and is of suitable age and discretion; or **(3)** by delivering the documents to an agent whom the individual has authorized to receive them. Ariz. R. Civ. P. 4.1(d)." (Underline and bold numbers by Plaintiff.)

421.  At first blush, Brnovich *appears* to simply be following/promoting Rule 4.1...

422.  But Defendant Brnovich governs with clever/calculated "*policies*" that prevent AGO officers/employees being Served at their offices, at home, or, actually, anywhere...*not even for official acts committed while* being *on the job*...which will be seen here as arbitrary, and contrary to: the Court's mandates and goals in Rule 4.1; the Agency Handbook; Due Process as guaranteed by the 14th Amendment; Equal Protection as guaranteed by the 14th Amendment; and Civil Rights as protected by 42 USC Sec 1983; all of which were violated when Brnovich's "*policies*" prevented my attempt to have 4 AGO officers Served at their offices, as named parties to my Complaint, for their documented criminal acts; acts they committed while on the job; acts which injured and caused me damages.

423.  This now 5 year plus journey began/took me on a wild geese chase as my licensed process being was stopped from Serving 4 AGO at the offices of the AGO, for acts they committed on the job (**Ex's 21-24**, at Ref's 1, 2 and 3):

"Attempted service at 1275 Washington St., Phoenix, AZ 85007, <u>per the executive office</u> <u>all individuals must be served off property</u>. <u>They refused to call them up to accept service</u>." (Bold underline by Plaintiff.)

**Note 10:** Please note: "<u>per the executive office</u>".
**Note 11:** Please note: "<u>all individual employees must be served off property</u>".
**Note 12:** Please note: "<u>They refused to call them up to accept service</u>."

424.  Defendant Brnovich also (rightly) conceals the home addresses of his officers from the public.

**Note 13:** "<u>off property</u>" includes *no where* on the AGO's premises...so my process server could not even serve a named party as they walked to their car, *before driving off into the abyss of no known home address*.

425.  There's more: *not only* does Defendant Brnovich conceal their home address, he conceals that these people even exist! Again, *see* **Ex's 21** through **24**, this time each at Ref 4 : "...<u>I failed to find</u> PAUL AHLER, Chief <u>or any further information to allow further search</u>.

426. So, my process server was unable to pursue Service "off property," as he had no leads/no information to pursue finding each party, not even a driver's license photo (e.g., from a license with a fictitious home address).

427.  So, without a photo, my process server could not even recognize a named party, to then, say, tail that named party from the AGO's office, to their home, to then Serve that named party, or leave the Summons at the named party's home *"with someone of suitable age and discretion who resides there."* (per Rule 4.1).

428.  Defendant Brnovich are *the* executive in the "executive office." His clever/calculated "*policies*" are by his own arbitrary creation; they are contrary to the Court's Rules of Civil Procedure; contrary to the Agency Handbook; and contrary to Procedural Due Process as guaranteed by the 14th Amendment to the US Constitution. *How much more impossible to Serve an AGO officer or employee could Brnovich have made it?*

429. Why would Defendant Brnovich, the Chief Legal Officer for the State, have an officer and employee mandate in 13.2.3 of his Employee Manual, requiring officers/employees follow Rule 4.1...but then have these

arbitrary "policies" that prevent Service at their offices, thereby adding to the complexities/costs of Service?

430. Why would Defendant Brnovich conceal the identities of his officers (thereby knowing that officer/a named party could not be found/Served at home), but also have "policies" that prevent Service of those officers at their offices, when someone is seeking justice for an officer's errant acts, committed while on the job?

431. Defendant Brnovich should have simply authorized the receptionist (that no one is allowed passed), *or any other employee* at the AGO, to accept Service...but instead, he has another "policy" that prevents appointing an AGO officer/employee from accepting Service 13.2.2.3)**:**

"Moreover, the policy of the Attorney General's office is that its employees may not authorize the Department of Law receptionist or any Attorney General employee to receive service of process on their behalf.""

**Note 14:** The Arizona AGO is the largest law firm in the State of Arizona...couldn't Defendant Brnovich find *someone* there qualified to accept and handle Service of Complaints for AGO officers and employees?

432. *Aren't AGO officers and employees ever named defendants in Complaints? Shouldn't there be some provision, in the name of fairness, and Justice, for the AGO's handling Service of officers and employees?*

433. *Shouldn't there be such a provision to reflect the Court's Rules, and in the name of Due Process?*

434. *My Attorney General, Defendant Brnovich, is cleverly cheating all of these ideals, by design.*

435. *What is the effect* Defendant Brnovich have created by his "policies"? *He has created a scenario in which none of his 3 approved methods for Service can be achieved* (per 13.2.2.3):

"(1) by delivering the necessary documents to the named individual;"

436. *But there is no place the named individual can be found...or even recognized to be identified/found!*

"(2) by leaving the documents at the individual's home with a person who both lives there and is of suitable age and discretion; or"

437. *But there is no way to find/Serve the named individual or anyone else at their home (or their office)!*

"(3) by delivering the documents to an agent whom the individual has authorized to receive them. Ariz. R. Civ. P. 4.1(d).""

438. *As Defendant Brnovich will not let a process server approach or even speak with any AGO officers or employees, there is no way to determine if the named individual has authorized someone to accept Service!*

439. I can tell you what the result of all of Defendant Brnovich's cleverness is, in real terms, from my own experience: my process server was not able to Serve, *let alone find* the 4 AGO officers named in my Complaint... *and so I had to Amend their names out, leaving only the State, and the 11th Amendment* (And oh by the way, when Defendant Brnovich responds to a Complaint...guess what? He pleads the 11th...*as planned by his policies*).

440. Isn't Defendant Brnovich clever...by not allowing his AGO officers to be Served at their office for

acts committed while on the job...and concurrently hiding these officers' home addresses and even identities

from the public, he has made it difficult, no, impossible, to Serve a Complaint on any of his officers/employees.

441. *Defendant Brnovich has built an impenetrable wall around his officers and employees.*

442.  *Defendant Brnovich has designed a system that is meant to rob Justice from potential plaintiffs.*

443. At minimum, Brnovich's "wall" not allowing Service of his officers at their offices, while he also

knows (intended) these officers cannot be found outside of their offices, is a bad faith violation of Due Process.

444.  Actually, Defendant Brnovich's cleverness <u>is a fraud scheme</u> ("a <u>scheme</u> or <u>artifice to defraud</u>") as he has

<u>defrauded</u> me (and others, likely, every day) of my (our) right to readily pursue Justice against his officers.

445.  Defendant Brnovich's <u>fraud scheme</u> is a trap for Arizona Citizens...by first <u>defrauding</u> us our right to sue

errant AGO officers, thereby forcing us to sue the State, so the AGO can then hide behind various cumbersome

Arizona State statutes that make it difficult to sue the State, and so the State can then also hide behind the 11th

Amendment to the US Constitution for state sovereignty.

446. Such a <u>fraud scheme</u> to make it impossible to sue errant AGO officers is an obvious and blatant violation of

Due Process...as such a <u>scheme</u> is clearly unfair, by any interpretation of Due Process, including as seen in the

simple language of cases from our US Supreme Court such as *Zinermon v Burch,* which made it clear that Due

Process under the 14 Amendment is to prevent our State governments "from engaging in arbitrary, wrongful

actions" (the original causation of/solution for such abuses by States and State officials):

"Substantive due process prevents the government from engaging in arbitrary, wrongful actions "regardless of the
fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108
L.Ed.2d 100 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986))

*Defendant Brnovich making it impossible to sue errant AGO officers is arbitrary and wrongful, and the kind of*

*abuse by State governments and State officials the 14th Amendment was intended to prevent.*

447. The Arizona Supreme Court aggress with such simple language:

"The touchstone of due process under both the Arizona and federal constitutions is <u>fundamental fairness</u>.
*Oshrin v. Coulter,* 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984). (Underline by Plaintiff.)

*Making it impossible to sue errant AGO officers cannot be seen as "<u>fundamental fairness.</u>"*

448.  Defendants, as Attorney General, acting under the color of law to his own end, took advantage of his position

and <u>created</u> these violations of my Rights, and <u>used</u> such against me as the <u>acts/injuries</u> I was attempting to Serve a

Complaint for <u>against</u> (eventually) 6 of his officers <u>benefited</u> his personal political sponsor, the most powerful law

firm in Arizona, Snell & Wilmer (who was working for the AGO at relevant times), and it was beneficial to

Brnovich's Chief Prosecutor (1 of the 6) whose son is an attorney at Snell.

449.  42 USC Sec 1983, allows an injured party to sue a government official for civil rights violations. It applies when a government official acting "under the color of" at the state-level or local law has deprived a person of rights created by the U.S. Constitution or Federal Law.

**Note 15:** The Arizona Agency Handbook gives an aggrieved party the right to pursue Federal Rights claims, such as Sec 1983, in State or Federal Court (13.3.2 Liability Based on Federal Law).

450.  To prevail in a claim under Section 1983, the plaintiff must prove two critical points: a governmental party subjected the plaintiff to conduct that occurred under color of state law, and that this conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under the U.S. Constitution or Federal Law, e.g., as per:

"By the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also, e.g., Groman v. Township of Manalapan*, 47 F.3d 633, 628, (3d Cir. 1995) ("A prima facie 23 case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; 24 and (2) the person who deprived him of that right acted under color of state or territorial law.").

451.  Defendant Brnovich can already be seen by the above to have deprived me of my Federal rights to Due Process; Equal Protection; and Civil Rights under Sec 1983; and below in Sec III he will be seen again repeatedly violating Sec 1983 and other by his "Supporting Acts" (*per* "Supporting Acts" above as **Sec II-I**).

452.  As an inept In Pro Se, I have just spent/wasted 5 years plus trying to work around Defendant Brnovich's clever scheme to prevent Service of his officers, which is now obvious to me as a violation of Due Process, a legal right which I had not understood...and I now understand what his scheme, which there is no way around, was designed to accomplish: smother my efforts at justice, in part, by painting me into a corner of suing the State as a protected defendant, so he could then use the 11th Amendment as an impenetrable shield.

453.  I had thought some Court would recognize that my Complaint was *in fact* against the 6 AGO officers, and not the State, and look beyond the 11th Amendment...but I have learned otherwise (which *see*).

454.  Defendant Brnovich are very clever...so clever, he was able to steal justice and 5 years plus from me, and likely from hundreds of other Arizonans. (No, this is not a Class Action lawsuit.)

455.  As an attorney; so an Officer of the Court; and the State's Chief Legal Officer, shouldn't Defendant Brnovich be seeking ways to promote "Justice for all" rather than creating ways to impede Justice?

**IV.  JURISDICTION**
456.  The matters in this Complaint are based upon the United States Constitution and Federal Law.

**V. VENUE**
457.  The events described in this Complaint occurred in Phoenix, Arizona.

458.  Plaintiff was a single man residing in Arizona, Coconino County, at the time of the events alleged herein.

54

459.  Upon information and belief, Defendant Mark Brnovich was a full- time resident of Arizona, County of Maricopa, at the time of the events described herein.

460.  Upon information and belief, Defendant Michael Bailey was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

461.  Upon information and belief, Defendant Don Conrad was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

462.  Upon information and belief, Defendant Paul Ahler was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

463.  Upon information and belief, Defendant Joe Waters was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

464.  Upon information and belief, Defendant Lisa Rodriguez was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

465.  Upon information and belief, Defendant Mark Perkovich was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

466. Upon information and belief, Defendant Zora Manjencich was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

467.  Upon information and belief, Defendant John Lopez was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

468.  Upon information and belief, Defendant Jennifer Perkins was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

469.  Upon information and belief, Defendant Mark Dangerfield was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

470.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants and Co-Defendants, while largely working in concert at various times, in varying configurations, each of them individually have also taken their own acts, and therefore are personally guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of actual, compensatory, consequential, punitive, damages to his person, compensatory, and exemplary damages, sufficient to punish and make an example of Defendants and Co-Defendants, and each of them.

## VI. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

471.  Plaintiff incorporates and realleges from COMMENTS BY FACTUAL ALLEGATIONS and paragraphs

1 through 470 above, the allegations therein as being common to all Causes of Action.

472.  For the above stated reasons, and more that will be forthcoming, Plaintiff prays the Court will award damages against Defendants as sought by the Plaintiff.

### *CAUSES OF ACTION, AND DAMAGES REQUESTED*

### FIRST CAUSE OF ACTION
### VIOLATION OF THE AND 14TH AMENDMENTS FOR DUE PROCESS

473.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS on pages 1/2 and paragraphs 1 through 472, inclusive, as though fully set forth herein.

474.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by violating my 14th Amendment rights to Due Process, both Substantive and Procedural. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

475.  As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

476.  By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of  interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, Plaintiff asks for treble damages.

477.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct and have herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co-Defendants, of them. Plaintiff is further informed and believes and thereon alleges that as to each Defendant which and each is a

corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE 14TH AMENDMENT FOR EQUAL PROTECTION

478.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS on pages 1/2 and paragraphs 1 through 477, inclusive, as though fully set forth herein.

479.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by violating my 14th Amendment Rights to Equal Protection, Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

480. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

481.  By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, Plaintiff asks for treble damages.

482.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co-Defendants, and each of them.  Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF 42 USC SEC 1983

483.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS on pages 1/2and paragraphs 1 through 482, inclusive, as though fully set forth herein.

484.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by violating my Civil Rights under 42 USC Sec 1983. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

485. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

486.  By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, Plaintiff asks for treble damages.

487.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co-Defendants, and each of them.  Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF 18 USC SECTION 1961

488.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL

ALLEGATIONS pages 1/2and paragraphs 1 through 487, inclusive, as though fully set forth herein.

489.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the

Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State,

and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they

committed as individuals outside of their official capacities, and so are personally liable for (not the State), by

violating 18 USC Sec 1961, as they acted together as an association-in-fact. Defendants, while having no

legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

490. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are

personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

491.  By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff

actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been

fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to

recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my

personal financial statement showing a net worth of this amount just before Defendants committed various

acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment.

Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by

Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil

mind, and as 18 USC Sec 1961 includes treble damages, Plaintiff asks for treble damages.

492. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged,

Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious

disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient

to punish and make an example of Defendants and their fellow conspirators and Co- Defendants, and each of them.

Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation,

partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or

ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## FIFTH CAUSE OF ACTION
## CONSPIRACY TO COMMIT RACKETEERING ACTS IN VIOLATION OF 18 USC SECTION 1961

493.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS pages 1/2and paragraphs 1 through 492, inclusive, as though fully set forth herein.

494.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by committing conspiracy to commit acts that would violate 18 USC Sec 1961. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

495. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

496.  By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, and as 18 USC Sec 1961 includes treble damages, Plaintiff asks for treble damages.

497.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co- Defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## SIXTH CAUSE OF ACTION
## OBSTRUCTION OF JUSTICE

498.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS pages 1/2and paragraphs 1 through 497, inclusive, as though fully set forth herein.

499.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by committing Obstruction of Justice. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

500. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

501. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, Plaintiff asks for treble damages.

502. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co-Defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## SEVENTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT

503.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL ALLEGATIONS pages 1/2and paragraphs 1 through 502, inclusive, as though fully set forth herein.

504. Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State, and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they committed as individuals outside of their official capacities, and so are personally liable for (not the State), by committing Fraudulent Concealment to hide evidence that documented criminal acts they had committed and so the injuries they caused me. The Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

505. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

506. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my personal financial statement showing a net worth of this amount just before Defendants committed various acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment. Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind, Plaintiff asks for treble damages.

507. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co- Defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## EIGHTH CAUSE OF ACTION
## FRAUD AND DECEPTIVE ACTS ON THE COURT

508.  Plaintiff repeats and realleges the allegations set forth from OPENING COMMENTS BY FACTUAL

ALLEGATIONS pages 1/2and paragraphs 1 through 507, inclusive, as though fully set forth herein.

509.  Defendants as listed above, and John and Jane Doe's as may be uncovered in discovery, have caused the

Plaintiff material damages by virtue of their repeated errant acts as State officials and/or employees of the State,

and in representation of various parties whom Plaintiff has taken legal action against, errant acts which they

committed as individuals outside of their official capacities, and so are personally liable for (not the State), by

committing Fraud and other deceptive acts on the Court including by concealing records, and lying to various Courts.

Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert

with one another.

510. As a direct and proximate result of the acts herein alleged, Defendants have, and each of them, are

personally (not the State), jointly and severally liable to the Plaintiff, for each of the wrongful acts herein alleged.

511. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff

actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been

fully ascertained but are believed to be well in excess of $628 million (this is the amount the AGO was seeking to

recuperate on my behalf under the just previous Attorney General, AG Tom Horne, an amount based upon my

personal financial statement showing a net worth of this amount just before Defendants committed various

acts as described in this Complaint), plus the highest rate of interest under Arizona Law, pre and post Judgment.

Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by

Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil

mind, Plaintiff asks for treble damages.

512. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct

herein alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have

acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described

above, sufficient to punish and make an example of Defendants and their fellow conspirators and Co-Defendants,

and each of them. Plaintiff is further informed and believes and thereon alleges that as to each Defendant which is a

corporation, partnership, trust or other entity, including an association-in-fact enterprise, such actions were

authorized or ratified by the leader-in-fact; one or more officers; directors; or managing agents of such Defendant.

## VII.  CONCLUSION OF THE FACTUAL ALLEGATIONS MADE IN THIS COMPLAINT

513.  *Between Lopez's above 3 Major Frauds, the miscellaneous frauds he (Lopez) created; Defendants forging the above 5 AGO Forged Records; Defendants concealing records; and their having no moral issue with Frauds/deceptions on the Courts, their "defenses" have been impenetrable...until now.*

514.  The results of Defendants' concealing records; forging records; firing investigators; threatening witnesses; countless Frauds/deceptions on the Courts, and other errant acts, are false judgments.

515.  *Defendants using earlier frauds as later defenses is not allowable...not since Booth v Lord Warrington (1694-1695) has an English Court; an American Colonial Court; or a US Court, accepted a defendant pleading a defense based on his/her/their own fraud...neither should this respected Court.*

516.  I hereby incorporate all of my previous Complaints, pleadings, and Exhibits into this Complaint.

517.  I hereby incorporate all of Defendants, and the State of Arizona's, previous pleadings, and Exhibits, in these matters, into this Complaint, including records Defendants and/or the AGO are yet concealing.

518.  For all of their self-righteousness, Defendants are just corrupt Public Officials serving themselves rather than the good Citizens of Arizona.

519.  Thanking the Court in advance for its time and efforts in adjudicating the matters herein.

Respectfully submitted this 11th day of January, 2022, by: _____, In Pro Se

Plaintiff Will Graven

Original of this Complaint filed with the Clerk of District Court this 11th day of January, 2022

Defendants to be Served as required by the Federal Rules of Civil Procedure.

VERIFICATION of the above allegations is on the following page.

CERTIFICATE OF SERVICE to be filed with the Court upon effecting Service of each Defendant

## **VERIFICATION**

STATE OF ARIZONA       )
                                 )ss:
County of Coconino        )

         William A. Graven, being first duly sworn upon his oath avows that he has written and therefore read this Complaint and that the allegations contained therein are true and correct, based upon his personal knowledge, except as to allegations made upon information and belief, and as to such allegations and information, he believes them to be true.

         As well, William A. Graven, being first duly sworn upon his oath avows that he has reviewed all Exhibits, and swears that each is a true and correct copy of the original, based upon my personal knowledge.

         Should I be called upon to testify under oath for either this Complaint and its contents, or the Exhibits attached thereto, I would be able to do so.

DATED this 11th of January, 2022.

_____
William A. "Will" Graven

Subscribed and sworn to before me, the undersigned Notary Public, this 11th day of January, 2022, by Will Graven.

_____
Notary Public

My Commission Expires: Feb 26, 2024

